E-FILED
Tuesday, 26 January, 2010  04:00:27 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| ALAN BEAMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JAMES SOUK, Former Assistant State's Attorney, ) | |
| CHARLES REYNARD, Former McLean County ) | |
| State's Attorney, TIM FREESMEYER, Former ) | |
| Normal Police Detective, ROB HOSPELHORN, ) | |
| Former Normal Police Detective, DAVE ) | JURY TRIAL DEMANDED |
| WARNER, Former Normal Police Detective, ) | |
| JOHN BROWN, Former Normal Police Lieutenant, ) | |
| FRANK ZAYAS, Former Normal Police ) | |
| Lieutenant, COUNTY OF McLEAN, ILLINOIS, ) | |
| and TOWN OF NORMAL, ILLINOIS, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff, ALAN BEAMAN, by his undersigned attorneys, for his complaint against Defendants JAMES SOUK, Former Assistant State's Attorney, CHARLES REYNARD, Former McLean County State's Attorney, TIM FREESMEYER, Former Normal Police Detective, ROB HOSPELHORN, Former Normal Police Detective, DAVE WARNER, Former Normal Police Detective, JOHN BROWN, Former Normal Police Lieutenant, FRANK ZAYAS, Former Normal Police Lieutenant, COUNTY OF McLEAN, ILLINOIS, and TOWN OF NORMAL, ILLINOIS, alleges as follows:

## INTRODUCTION

1.     This suit is brought to redress the enormous injury inflicted upon Plaintiff by those individuals responsible for the investigation and prosecution of the August 1993 murder of

Jennifer Lockmiller.   The above-named individual Defendants and other unknown co-conspirators, individually and in conspiracy, caused Plaintiff to be convicted of Lockmiller's murder—a crime he did not commit—and to spend over thirteen years of his life in prison.

2.     The Defendants caused material exculpatory evidence to be concealed from Plaintiff and his defense counsel, in violation of Plaintiff's right to a fair trial under the Fifth and Fourteenth Amendments of the United States Constitution.   Specifically, the Defendants developed evidence showing that Plaintiff did not have the opportunity to commit the murder and that there was a viable alternative suspect in the murder.   They caused this evidence to be concealed from Plaintiff and his defense counsel.   Had this exculpatory evidence been disclosed to Plaintiff, Plaintiff would not have been convicted.

3.     The Defendants also caused the prosecution of Plaintiff with knowledge that there was no probable cause to do so.   The Defendants concealed material exculpatory evidence as described above and Defendant Freesmeyer gave false and misleading testimony, causing Plaintiff to be wrongfully indicted and convicted without probable cause.

4.     The Defendants' unconstitutional, malicious, and fraudulent conduct resulted in Plaintiff's wrongful conviction and incarceration for Lockmiller's murder.   As a direct result of the Defendants' misconduct, Plaintiff has unnecessarily endured extraordinary hardship and suffered incalculable pain, for which he seeks redress in this suit.

## JURISDICTION AND VENUE

5.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution as well as deprivation of rights under state law.

6.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

2

7.     Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, formerly resided in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

8.     This action is properly filed in the Peoria Division of this District pursuant to Local Rule 40.1(A) because the events giving rise to the claims asserted herein occurred in McLean County, Illinois.

## PARTIES

9.     Plaintiff Alan Beaman, 37, currently resides in Rockford, Illinois.  At the time of his wrongful prosecution for the murder of Jennifer Lockmiller, Plaintiff was a 22-year-old theater major attending Illinois Wesleyan University in Bloomington, Illinois.

10.     Defendant James Souk was at all times relevant to this action employed as an Assistant State's Attorney by the McLean County State's Attorney's Office.  Defendant Souk participated in, supervised, and directed the Lockmiller murder investigation and also acted as the primary prosecutor throughout Plaintiff's criminal trial.

11.     Defendant Charles Reynard was at all times relevant to this action employed as the McLean County State's Attorney.  Defendant Reynard participated in, supervised, and directed the Lockmiller murder investigation and also supervised the criminal prosecution of Plaintiff.

12.     Defendant Timothy Freesmeyer was at all times relevant to this action employed as a Detective in the Normal Police Department.  Defendant Freesmeyer participated in the Lockmiller murder investigation.   In or around October 1993, Defendant Freesmeyer was appointed the lead investigator in the Lockmiller murder investigation.

13. Defendant Rob Hospelhorn was at all times relevant to this action employed as a Detective in the Normal Police Department. Defendant Hospelhorn participated in the Lockmiller murder investigation.

14. Defendant Dave Warner was at all times relevant to this action employed as a Detective in the Normal Police Department. Defendant Warner participated in the Lockmiller murder investigation.

15. Defendant John Brown was at all times relevant to this action employed as a Lieutenant in the Normal Police Department. Defendant Brown participated in, supervised, and ratified the decisions taken in the course of the Lockmiller murder investigation.

16. Defendant Frank Zayas was at all times relevant to this action employed as a Lieutenant in the Normal Police Department. Defendant Zayas participated in, supervised, and ratified the decisions taken in the course of the Lockmiller murder investigation.

17. Defendant County of McLean is a political subdivision of the State of Illinois. At all times relevant to this action, the County of McLean was the employer and principal of Defendants Souk and Reynard.

18. Defendant Town of Normal is a political subdivision of the State of Illinois. At all times relevant to this action, the Town of Normal was the employer and principal of Defendants Freesmeyer, Hospelhorn, Warner, Brown, and Zayas.

19. All of the individual Defendants are sued in their individual capacities. Each of the individual defendants acted within the scope of his employment and under color of state law while engaging in the actions alleged in this complaint and at all times relevant to this action.

4

## ALLEGATIONS OF FACT

### The Murder of Jennifer Lockmiller

20.     On Saturday, August 28, 1993, shortly after 2:00 pm, Normal police officers responded to the apartment of Jennifer Lockmiller, a 21-year-old Illinois State University student who resided near the university's campus in Normal, Illinois.  The officers discovered Lockmiller's severely decomposed and partially unclothed body on the floor of her bedroom, with an electrical cord from an alarm clock wrapped around her throat and a box fan lying across her face.  Lockmiller had also been stabbed with a pair of scissors, which were buried in her chest up to the handles.  The autopsy, conducted the next morning, indicated that Lockmiller had died of ligature strangulation with the electrical cord from the alarm clock.

21.     The bizarre murder of a young college student in her apartment quickly became a high profile story in the "twin" college towns of Normal and Bloomington, Illinois.  The impending start of the school year and return of the students to both ISU in Normal and IWU in Bloomington placed extreme pressure on the Defendants to solve the murder.

22.     Because of the high-profile nature of the case, Defendants Souk and/or Reynard were actively involved in the Lockmiller murder investigation from day one.  They remained intimately involved throughout the course of the investigation—so much so that in or around late September or early October 1993, the individual Normal police officer Defendants began conducting their investigation of the Lockmiller murder out of a work space at the McLean County State's Attorney's Office.

23.     Defendant Freesmeyer, who in or around October 1993 became the lead detective in the Lockmiller murder investigation, had never managed a murder investigation before. He had a strong incentive to solve the murder to establish his reputation as an effective investigator.

5

The pressures of Freesmeyer's career, coupled with his inexperience, compromised his ability to conduct a fair investigation.

### Tunnel Vision:  Immediate Focus on Plaintiff

24.      Because there were no signs of forced entry or a struggle at the crime scene, the Defendants immediately assumed that Lockmiller was murdered by an acquaintance.  They focused their investigation entirely on Lockmiller's romantic interests, making no effort to investigate any alternative scenarios for her death.

25.      Within hours of the discovery of Lockmiller's body, Plaintiff was the prime suspect in her murder.  He and Lockmiller had begun dating in or around July 1992 and had broken off their relationship approximately one month prior to the murder.  At the time of the murder, however, Plaintiff was living at his parents' home in Rockford, Illinois—approximately 140 miles away from Normal.  In fact, Plaintiff was completely innocent of any involvement whatsoever in Lockmiller's murder and he had no knowledge of who had committed the crime.

26.      Plaintiff remained the prime suspect throughout the investigation, despite the fact that the Defendants were unable to locate any physical evidence definitively linking him to the crime scene.

27.      Further, although the decomposed state of the body made it impossible to pinpoint the exact time or date of Lockmiller's death, the Defendants tailored their theory of the crime to fit Plaintiff's schedule.  They theorized that the murder had occurred close to 12:00 pm on Wednesday, August 25, 1993—the only time that day at which Plaintiff could have even conceivably had the chance to drive the two hours to and from Normal.  The State maintained this theory of the time of the murder at Plaintiff's trial.

28.     Focusing solely on Plaintiff, Defendants also conducted superficial investigations of the following other potential suspects:

(a)     Michael Swaine, who was Lockmiller's current boyfriend and was living with her at the time of her murder, was eliminated as a suspect and began actively cooperating in the investigation of Plaintiff a mere four days after the body was discovered, even though several of Lockmiller's neighbors reported seeing a car fitting the description of Swaine's in the parking lot of Lockmiller's apartment complex on the afternoon of Wednesday, August 25; four of Swaine's fingerprints were lifted from the alarm clock used to strangle Lockmiller; and Swaine's DNA profile was found on Lockmiller's bedsheet.  This evidence was nearly identical to the evidence developed against Plaintiff.

(b)     Stacy "Bubba" Gates, who, like Plaintiff, was one of Lockmiller's former boyfriends, was eliminated as a suspect despite the fact that he had recently moved to Peoria to be closer to Lockmiller and that he and Lockmiller had plans to see each other on the Saturday after the murder.

(c)     John Doe, another ex-boyfriend of Lockmiller's, was never eliminated as a suspect and had both the motive and opportunity to commit the murder, as is more fully described below.[1]

**Withholding of Material Exculpatory Evidence**

29.     Throughout the investigation, the Defendants developed exculpatory evidence suggesting that Plaintiff did not have the opportunity to commit the murder and that John Doe

---

[1]To protect his identity and to promote continued investigation, John Doe's actual name is not being released into the public record at this time.

was a viable alternative suspect in the murder.  The Defendants caused this evidence to be concealed from Plaintiff and his defense counsel.  Had the evidence been disclosed, Plaintiff would not have been convicted.

*Plaintiff's Opportunity to Commit the Murder*

30.     The Defendants concealed from Plaintiff and his defense counsel the fact that their own investigation had confirmed Plaintiff's alibi and essentially eliminated his opportunity to commit the murder.

31.     Plaintiff was videotaped leaving Bell Federal Savings & Loan in Rockford at 10:11:43 am on the day of the murder.  Phone records also showed that at 10:37 am that day, a two-minute phone call was placed from Plaintiff's residence to his church.  At 10:39 am, a one-minute phone call was placed from Plaintiff's residence to the home of Mitchell Olson, the church's director of youth ministries and music.

32.     The State's case against Plaintiff heavily relied upon the theory that Plaintiff did not make the phone calls from his residence on the day of the murder.  Plaintiff's mother, Carol Beaman, testified that when she returned home at approximately 2:16 pm that afternoon, Plaintiff was in his room and his car was in the driveway.  If Plaintiff made the phone calls at 10:37 am and 10:39 am, it would have been practically impossible for him to drive the 140 miles to Normal, commit the murder, and drive back to Rockford in time to be home before his mother arrived.

33.     It was undisputed that only Plaintiff or Mrs. Beaman could have made the phone calls.  At trial, Mrs. Beaman testified that she did not make the phone calls.

34.     Prior to trial, Defendant Freesmeyer and other unknown individuals conducted a number of time trials between Bell Federal and Plaintiff's residence to determine whether

Plaintiff had enough time to leave Bell Federal at 10:11 am and arrive home in time to make the first phone call at 10:37 am. Defendants Souk and/or Reynard were directly and actively involved in the planning of these time trials. On information and belief, Defendant Souk also participated in and was physically present with Defendant Freesmeyer on at least one of these time trials.

35.     On or around June 22, 1994, Defendant Freesmeyer recorded that the drive from Bell Federal to Plaintiff's residence, observing all speed limits, was 31 minutes. At trial, Defendant Freesmeyer testified that this route went through downtown Rockford and was the "most direct" route from Bell Federal to Plaintiff's residence. Based upon this time trial—which was the only time trial presented to the jury—Plaintiff would have arrived home at 10:42 am. The State highlighted the importance of this time trial to the jury, arguing that Plaintiff could not have driven home from Bell Federal in time to make the phone calls. The evidence regarding this time trial thus substantially bolstered the State's theory that Plaintiff must have driven from Bell Federal to Normal, committed the murder, and returned to his residence in Rockford in the early afternoon.

36.     Without documenting it in any report, Defendant Freesmeyer and other unknown individuals had timed an alternate route from Bell Federal to Plaintiff's residence at least once prior to trial. This alternate route (hereinafter referred to as the "bypass route") bypassed downtown Rockford by way of U.S. Route 20. Defendant Freesmeyer completed his drive from Bell Federal to Plaintiff's residence using the bypass route in 25 minutes—more than enough time for Plaintiff to have made it home by 10:37 am to make the phone calls.

37.     Defendant Freesmeyer omitted any mention of his time trial of the bypass route in any written report or memorandum documenting the investigation.  If a report of this or any subsequent time trials of the bypass route ever existed, it was never disclosed.

38.     At Plaintiff's trial, Defendant Freesmeyer did not testify as to any time trial he conducted using the bypass route.

39.     Acting individually and in conspiracy with each other and other unknown co-conspirators, the Defendants caused this exculpatory time trial evidence to be concealed from Plaintiff and his defense counsel.

40.     Had this evidence been disclosed to Plaintiff and his defense counsel, Plaintiff would have shown that he made the phone calls from his residence at 10:37 am and 10:39 am and therefore did not have the opportunity to commit the murder.

*John Doe as an Alternative Suspect*

41.     The Defendants also developed and concealed important evidence suggesting that John Doe had both the opportunity and motive to commit the murder and was therefore a viable alternative suspect.  Had the Defendants turned over all of the evidence they possessed regarding John Doe, Plaintiff would have been permitted to present Doe as an alternative suspect to the jury and he would not have been convicted of the murder.

42.     During their investigation of the Lockmiller murder in September 1993, Normal Police Detective Tony Daniels and Defendant Hospelhorn conducted two interviews with John Doe.  Doe admitted that he was one of Lockmiller's former boyfriends and that he and Lockmiller had been about to rekindle their romantic relationship just before her death.  He said that Lockmiller and her new boyfriend, Michael Swaine, had stopped by Doe's apartment a few

days before the murder.  Doe also admitted that he had sold drugs to Lockmiller in the past and

that, at the time of her death, Lockmiller owed Doe money for marijuana.

43.     Doe appeared to be evasive and very nervous during his interviews with the

police.  In fact, he initially gave a false alibi for the day of the murder.  During his first

interview, Doe claimed that he went out of town on August 24, 1993—the day before the

murder.  At his second interview, Doe admitted that he did not leave his apartment in

Bloomington until 4:00 pm on August 25.  Doe's girlfriend informed police that she was with

Doe on August 25 from 2:00 pm until approximately 4:20 pm.  Doe therefore had no alibi for

the suspected time of Lockmiller's murder.

44.     In addition to this evidence, the Defendants were in possession of the following

information, which was concealed from Plaintiff and his defense counsel:

(a)     On September 30, 1993, Doe submitted to a polygraph examination at the
        Illinois State Police Bureau of Forensic Sciences in Morton, Illinois.
        Throughout the course of the examination, Doe did not follow specific
        directions necessary for the proper completion of a polygraph examination
        and ultimately informed the polygraph examiner that he was unable to
        comply.  The record of Doe's polygraph examination is documented in a
        report authored by Terrence McCann and addressed to Defendant Warner.
        Tellingly, the report designates Doe as a "suspect."

(b)     In October 1994, Doe was arrested and charged with domestic battery
        against his girlfriend and possession of marijuana with intent to deliver.
        Doe's girlfriend told police that she was the victim of physical abuse on a

11

continual basis and that on that particular day, Doe had pinned her down on the floor and elbowed her repeatedly in the chest.

(c)     After his arrest, Doe's girlfriend filed a petition for order of protection against Doe.  She stated that Doe had physically abused her on numerous prior occasions.  Additionally, she stated that Doe was taking injections of street steroids, which caused him to act erratically.

Plaintiff did not become aware of this additional evidence regarding John Doe until his post-conviction proceeding, at which time he promptly alleged that he had been prejudiced by the failure to disclose it.

45.     Acting individually and in conspiracy with each other and with other unknown co-conspirators, the Defendants caused the information about Doe's incomplete polygraph examination, drug and domestic violence charges, petition for order of protection, and steroid use to be concealed from Plaintiff and his defense counsel.

46.     In fact, Defendants Freesmeyer and Souk affirmatively represented that there was no evidence implicating anyone else in Lockmiller's murder.  At the grand jury proceeding, Defendant Freesmeyer falsely testified that he was unable to locate any other person who had any conceivable motive to commit the murder.  At a pretrial hearing, Souk told Plaintiff, defense counsel, and the court that he knew of "no such evidence" with which the defense could argue that any other party "might be found responsible" for the murder.  At a subsequent pretrial discussion, Souk argued that Doe was "six months removed" from the case and again represented that there was no evidence suggesting that Doe was a viable alternative suspect.

47.     Had the evidence regarding Doe been disclosed to Plaintiff and his defense counsel, Plaintiff would have been permitted to present Doe as an alternative suspect at trial.

12

This evidence was highly material.  Indeed, one of the State's themes at trial was "[s]uspect everyone in turn and then wipe him or her off the list."  The prosecutors also argued that the State had "proved up everybody else's" alibi but Plaintiff's.  The concealment of the evidence regarding Doe's motive and opportunity to commit the murder left Plaintiff without the means to challenge these false assertions.

48.     Had Plaintiff been permitted to present Doe as an alternative suspect, Plaintiff would not have been convicted of the murder of Jennifer Lockmiller.

## The Malicious Prosecution

49.     On May 17, 1994, Plaintiff was arrested for the murder of Jennifer Lockmiller.  In July 1994, a grand jury returned indictments against Plaintiff for two counts of first degree murder.  In March 1995, Plaintiff stood trial in the Circuit Court of McLean County.

50.     At trial, the only evidence the State presented to link Plaintiff to the murder was wholly circumstantial.  The State's theory also relied upon 1) very questionable—and incomplete—evidence that Plaintiff had only a tiny window of opportunity to drive 140 miles to and from Normal to commit the murder on August 25, 1993, and 2) the false assertions that there was no viable alternative suspect in Lockmiller's murder.

51.     The initiation and continuation of the criminal proceedings against Plaintiff were the result of improper conduct by the Defendants.  All of the individual Defendants caused material exculpatory evidence to be withheld as is more fully described above.  Defendant Freesmeyer gave false and misleading testimony during the criminal proceedings as is more fully described above.

52.     As a proximate result of the Defendants' misconduct as described above, Plaintiff was wrongfully indicted, convicted, and sentenced to 50 years' imprisonment in the Illinois Department of Corrections.

### Plaintiff's Exoneration

53.     On May 22, 2008, after a lengthy appellate and post-conviction process, the Illinois Supreme Court unanimously reversed the judgments of the circuit and appellate courts upholding Plaintiff's conviction.  *People v. Beaman*, 229 Ill. 2d 56 (2008).   The Illinois Supreme Court held that the suppression of material exculpatory information relating to John Doe violated Plaintiff's constitutional right to due process under *Brady v. Maryland*, 373 U.S. 83 (1963).  Accordingly, it vacated Plaintiff's conviction and remanded to the circuit court for a new trial.

54.     After spending over thirteen years in prison, Plaintiff was released on bond on June 26, 2008.

55.     On January 29, 2009, the State chose not to initiate a new trial and dismissed all charges against Plaintiff.

### Plaintiff's Damages

56.     Plaintiff has suffered and continues to suffer enormous injury as a direct and proximate result of the Defendants' misconduct.  Plaintiff spent more than thirteen years of his life imprisoned for a crime of which he was completely innocent.  He woke up each day with this reality, not knowing whether he would ever succeed in proving the wrongfulness of his conviction and incarceration.

57.     During this time, Plaintiff was separated from his family and friends.  He was also deprived of the opportunity to continue his education, engage in productive labor, pursue a career, and start a family.

58.     Following his exoneration and release from custody, Plaintiff suffers from lasting psychological damage, including Post-Traumatic Stress Disorder.  His reputation in his home town of Rockford, Illinois, has also been irreparably tarnished.  People in Plaintiff's community still believe that he murdered Jennifer Lockmiller, making it incredibly difficult for Plaintiff to move on with his life.  In addition to causing psychological damage, this has caused Plaintiff extreme hardship, resulting, among other things, in Plaintiff's loss of gainful employment.

## COUNT I
## 42 U.S.C. § 1983 – Due Process

59.     Plaintiff repeats and realleges paragraphs 1 through 59 as if fully set forth herein.

60.     As described more fully above, the individual Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

61.     In the manner described more fully above, the Defendants deliberately caused material exculpatory evidence to be withheld from Plaintiff and his defense counsel, thereby misleading and misdirecting the criminal prosecution of Plaintiff.  The exculpatory evidence concealed from Plaintiff and his defense counsel includes but is not limited to the following:

  (a) reports of Defendant Freesmeyer's time trial(s) from Bell Federal to Plaintiff's residence using the bypass route;

  (b) the report of the polygraph examination administered to John Doe on September 30, 1993;

15

    (c)    the police reports documenting John Doe's arrest for domestic assault;

    (d)    the petition for order of protection filed against Doe by his girlfriend and the statements contained therein; and

    (e)    further and additional exculpatory evidence not yet known to Plaintiff. Absent the Defendants' misconduct, the prosecution of Plaintiff could not and would not have been pursued.

62.    The Defendants' misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his constitutional right to a fair trial and a fair appeal thereof.

63.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

64.    As a direct and proximate result of this deprivation of his constitutional right to a fair trial, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

### COUNT II
### 42 U.S.C. § 1983 – Conspiracy

65.    Plaintiff repeats and realleges paragraphs 1 through 65 as if fully alleged herein.

66.    All of the individual Defendants and other co-conspirators not yet known to Plaintiff reached an agreement amongst themselves to deprive Plaintiff of material exculpatory evidence and information to which he was lawfully entitled and which would have led to his more timely exoneration of the false changes, all in violation of Plaintiff's constitutional rights as described above.

67.    In this manner, the Defendants, acting in concert with other unknown co-conspirators, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

68.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

69.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

70.     As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated. He suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

**COUNT III**
**42 U.S.C. § 1983 – Failure to Intervene**

71.     Plaintiff repeats and realleges paragraphs 1 through 71 as if fully alleged herein.

72.     In the manner described above, during the constitutional violations described above, one or more of the individual Defendants, and other unknown individuals, stood by without intervening to prevent the misconduct.

73.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

74.     As a direct and proximate result of this failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

**COUNT IV**
**State Law Claim – Malicious Prosecution**

75.     Plaintiff repeats and realleges paragraphs 1 through 75 as if fully alleged herein.

76.     All of the individual Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were

instituted and continued maliciously, resulting in injury to Plaintiff.  All such proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of innocence.

77.     The Defendants identified above accused Plaintiff of murdering Lockmiller knowing those accusations to be without probable cause.  The individual Normal police officer Defendants made statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings against Plaintiff.

78.     The initiation and continuation of the criminal proceedings against Plaintiff were the result of improper conduct by the Defendants.  All of the individual Defendants withheld material exculpatory evidence as is more fully alleged above.  Defendant Freesmeyer gave knowingly false and misleading testimony as is more fully alleged above.

79.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights.

80.     As a direct and proximate result of this misconduct, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## COUNT V
### State Law Claim – Civil Conspiracy

81.     Plaintiff repeats and realleges paragraphs 1 through 81 as if fully alleged herein.

82.     As described more fully in the preceding paragraphs, all of the individual Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

83.     In furtherance of the conspiracy, the Defendants identified above committed overt acts and were otherwise willful participants in joint activity.

84.     The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

18

85.     As a direct and proximate result of the Defendants' conspiracy, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## COUNT VI
### State Law Claim – Intentional Infliction of Emotional Distress

86.     Plaintiff repeats and realleges paragraphs 1 through 86 as if fully alleged herein.

87.     The acts and conduct of the individual Defendants as set forth above were extreme and outrageous. The Defendants intended to cause or were in reckless disregard of the probability that their conduct would cause severe emotional distress to Plaintiff, as is more fully alleged above.

88.     The individual Defendants' actions and conduct did directly and proximately cause severe emotional distress to Plaintiff, and thereby constituted intentional infliction of emotional distress.

89.     The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to the rights of others.

90.     As a proximate result of the Defendants' wrongful acts, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## COUNT VII
### State Law Claim – Respondeat Superior

91.     Plaintiff repeats and realleges paragraphs 1 through 91 as if fully alleged herein.

92.     In committing the acts alleged in the preceding paragraphs, Defendants Souk and Reynard were members of, and agents of, the McLean County State's Attorney's Office, acting at all relevant times within the scope of their employment and under color of law.

93.     Defendant County of McLean is liable as a principal for all torts committed by its agents.

94.     In committing the acts alleged in the preceding paragraphs, the individual Normal police officer Defendants were members of, and agents of, the Normal Police Department, acting at all relevant times within the scope of their employment and under color of law.

95.     Defendant Town of Normal is liable as principal for all torts committed by its agents.

## COUNT VIII
### State Law Claim – Indemnification

96.     Plaintiff repeats and realleges paragraphs 1 through 96 as if fully alleged herein.

97.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

98.     Defendants Souk and Reynard were employees of the McLean County State's Attorney's Office who acted within the scope of their employment in committing the misconduct described herein.

99.     The individual Normal police officer Defendants are or were employees of the Normal Police Department who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff Alan Beaman prays that this Court enter judgment in his favor and against Defendants James Souk, Former Assistant State's Attorney, Charles Reynard, Former McLean County State's Attorney, Tim Freesmeyer, Former Normal Police Detective, Rob Hospelhorn, Former Normal Police Detective, Dave Warner, Former Normal Police Detective, John Brown, Former Normal Police Lieutenant, Frank Zayas, Former Normal Police Lieutenant, the County of McLean, Illinois, and the Town of Normal, Illinois, awarding compensatory damages, costs and attorneys' fees, and punitive damages against each of the

individual defendants in their individual capacities; and for such further and additional relief as this Court may deem appropriate and just.

## JURY DEMAND

Plaintiff demands trial by jury.

Respectfully submitted,

**ALAN BEAMAN**


By:  /s/ Locke E. Bowman
     One of his attorneys

Locke E. Bowman
Brittany Parling
Roderick MacArthur Justice Center
Northwestern University School of Law
375 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-0844

Jeffrey Urdangen
Bluhm Legal Clinic
Northwestern University School of Law
375 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-7413

Sam Dudek, Jonathan Shaub, and Adam Wexner, students at Northwestern University School of Law, assisted in the preparation of this document.