**E-FILED**
Friday, 10 September, 2010  10:07:14 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| Alan Beaman, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  10-CV-1019 |
| | ) | |
| James Souk, Charles Reynard, | ) | |
| Tim Freesmeyer, Rob Hospelhorn, | ) | |
| Dave Warner, John Brown, | ) | |
| Frank Zayas, McClean County, Illinois, | ) | |
| Town of Normal, Illinois, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>REPORT AND RECOMMENDATION</u>

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiff pursues federal and state claims based on Defendants'
alleged concealment of exculpatory evidence, which allegedly caused his
wrongful conviction and 13-year imprisonment.  Before the Court are the
Defendants' respective motions to dismiss pursuant to Fed. R. Civ. P.
12(b)(6).

### Standard

To state a claim under federal notice pleading standards, the
Complaint must set forth a "short and plain statement of the claim showing

that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Factual

allegations are accepted as true and must give "'fair notice of what the . . .

claim is and the grounds upon which it rests.'"  EEOC v. Concentra Health

Serv., Inc., 496 F.3d 773, 776-77 (7th Cir. 2007), *quoting* Bell Atlantic Corp.

v. Twombly, 127 S.Ct. 1955, 1964 (2007)(other citation omitted).  However,

the "' . . . allegations, [must] show that it is plausible, rather than merely

speculative, that [the plaintiff] is entitled to relief.'"  Tamayo v. Blagojevich,

526 F.3d 1074, 1083 (7th Cir. 2008)(quoted and other citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged. . . . Threadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do not

suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009), *citing* Twombly,

127 S.Ct. 1955.  Legal conclusions, unsupported by alleged underlying

facts, are not entitled to "the assumption of truth."  Id. at 1951.  However,

"'plausibility' . . . does not imply that the district court should decide whose

version to believe, or which version is more likely than not."  Swanson v.

Citibank, N.A., — F.3d —, 2010 WL 2977297 *3 (7th Cir. 2010).  "[T]he

plaintiff must give enough details about the subject-matter of the case to

present a story that holds together." <u>Id.</u>   The application of the notice

pleading standard is "'a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense.'" <u>Cooney v.</u>

<u>Rossiter</u>, 538 F.3d 967, 971 (7th Cir. 2009), *quoting* <u>Iqbal</u>, 129 S.Ct. at

1950.

## Allegations

On August 28, 1993, Town of Normal police officers discovered the

decomposing body of 21-year-old Jennifer Lockmiller in her bedroom.  She

had been stabbed with scissors and strangled with the cord of an alarm

clock.  Ms. Lockmiller had been a student attending Illinois State University

at the time, and the murder was highly publicized.  Police officers and

county prosecutors were under heavy pressure to solve the case.

Defendant Reynard, the McClean County State's Attorney at the

time, and Defendant Souk, an Assistant State's Attorney at the time, "were

actively involved in the Lockmiller murder investigation from day one,"

along with Town of Normal police officers  (Complaint ¶ 22).  The police

officers worked their investigation from space inside the State's Attorney's

Office.  <u>Id.</u>

The investigation focused on Lockmiller's romantic interests at the time, of which there were several.  Plaintiff and Lockmiller had started dating in July 1992 and had broken up about a year later, one month before the murder.  (Complaint ¶ 25).  At the time of the murder, Plaintiff had been living at his parents' home in Rockford, Illinois, which is about 140 miles away from Normal.  Nevertheless, Plaintiff became the prime suspect "within hours of the discovery of Lockmiller's body . . . ." (Complaint ¶ 25).

Although Lockmiller's decomposed body "made it impossible to pinpoint the exact time or date of Lockmiller's death, the Defendants tailored their theory . . . to fit Plaintiff's schedule."  (Complaint ¶ 27).  They decided that Lockmiller's murder occurred at about 12:00 p.m. on August 25, 1993, the only time Plaintiff could have conceivably had the time to drive to Normal and back.  Id.   "Superficial" investigation of two other romantic interests were conducted.  (Complaint ¶ 28).  One was Michael Swain, who was living with Lockmiller at the time of the murder, whose car had been seen in the parking lot on the day of the murder, and whose fingerprints and DNA profile were found in Lockmiller's residence. (Complaint ¶ 28(a)).   Another was Stacy "Bubba" Gates, a former

boyfriend of Lockmiller, who had moved to Peoria to be closer to Lockmiller, and who had plans to see Lockmiller on the Saturday after the murder.  (Complaint ¶ 28(b)).  Although the Complaint does not say, it appears that Swain and Gates both had work alibis during the time the murder was believed to have been committed.  *See* People v. Beaman, 229 Ill.2d 56, 64 (2008).

A third individual, "John Doe," another former boyfriend, was investigated and had the motive and opportunity to commit the murder. (Complaint ¶ 28(c)).  During the investigation, Defendant Hospelhorn and another Normal police detective interviewed Doe and discovered that Doe and Lockmiller had been planning to rekindle their relationship shortly before her murder, and that Lockmiller owed him money for drugs. (Complaint ¶ 41).  Doe at first falsely claimed that he was out of town on the day of the murder.  Doe later claimed that he had not left his apartment until 4:00 p.m. on the day of the murder, but his girlfriend could only corroborate that she had been with Doe from 2:00 p.m. to 4:20 p.m.. (Complaint ¶ 43).  Thus, Doe did not have corroboration of his alibi.

Defendants concealed information about Doe that they uncovered during the investigation which demonstrated that he was a viable

alternative suspect.  Particularly, they concealed that: 1) Doe had been uncooperative and unable to complete a polygraph examination;  2) that he had been arrested and charged in October 1994 with domestic battery of his girlfriend and drug possession with the intent to deliver; 3) that he had a history of physically abusing his girlfriend; 4) that his girlfriend had filed for an order of protection after the arrest; and 5) that his girlfriend had accused him of taking "street steroids, which caused him to act erratically." (Complaint ¶ 44).

Defendant Freesmeyer, a Normal police detective at the time, testified before the grand jury that he had been unable to find any other viable suspects, despite his knowledge about John Doe.  Similarly, Defendant Souk (assistant state's attorney) maintained in pretrial hearings that there was no evidence of a viable alternative suspect and that there was no evidence to implicate Doe.

In addition to the absence of any viable alternative suspect, Prosecutors' theory of the case depended on Plaintiff having enough time to drive from Rockford to Normal and back to Rockford to be home by 2:16 p.m. on the day of the murder, the time his mother testified that she came home and saw his car in the driveway and him in his room.

(Complaint ¶ 32).  Plaintiff was caught on videotape leaving Bell Federal

Savings and Loan in Rockford at 10:11 that morning.  Phone records from

Plaintiff's residence that morning showed that phone calls were made from

Plaintiff's residence at 10:37 and 10:39 a.m..  If Plaintiff made those phone

calls, "it would have been practically impossible for him to drive the 140

miles to Normal, commit the murder, and drive back to Rockford in time to

be home before his mother arrived."  (Complaint ¶ 32).  Plaintiff's mother

testified that she did not make the phone calls.  (Complaint ¶ 33).

Before the trial, Defendant Freesmeyer conducted time trials to see if

it was possible for Plaintiff to drive from the bank to his home in time to

make the two phone calls.  One route that was timed took 31 minutes (the

"direct" route), but another route took only 25 minutes (the "bypass" route).

(Complaint ¶¶ 35-36).  Defendants Souk and Reynard were involved in

these time trials, and took the position that Plaintiff would have taken the

direct route home, even though it took longer than the bypass route.

(Complaint ¶ 34).  Defendant Freesmeyer omitted mention of the shorter

route in his written reports, and did not testify at trial about his timed trial of

the bypass route.  (Complaint ¶ 37-38).  Plaintiff contends if Freesmeyer

had disclosed his timed trial of the bypass route, it "would have shown that

[Plaintiff] made the phone calls from his residence and therefore did not have the opportunity to commit the murder."  (Complaint ¶ 40).

Plaintiff was arrested in May 1994, and two months later a grand jury indicted him on first degree murder charges.  He was tried in March 1995 and convicted on circumstantial evidence which included the "1) very questionable—and incomplete—evidence that Plaintiff had only a tiny window of opportunity to drive 140 miles to and from Normal to commit the murder on August 25, 1993, and 2) the false assertions that there was no viable alternative suspect in Lockmiller's murder."  (Complaint ¶ 50). Plaintiff was sentenced to 50 years.

Thirteen years later, the Illinois Supreme Court reversed Plaintiff's conviction, on the grounds that the State had failed to disclose materially exculpatory evidence about John Doe as a viable alternative suspect. People v. Beaman, 229 Ill.2d 56 (2008).  On January 29, 2009, the State dismissed the charges against Plaintiff.

## Analysis

## I.    Federal Claims

### A.  Count I: Due Process

A Brady violation can be broken down into three basic elements: (1) the evidence at issue is favorable to the accused,

either being exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued-in other words, "materiality."

Carvajal v. Dominguez, 542 F.3d 561, 566-67 (7th Cir. 2008)(citations omitted).

"Evidence is 'suppressed' when (1) the prosecution failed to disclose the evidence in time for the defendant to make use of it, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." Id. (citation omitted).  Only exculpatory evidence that is unknown to a criminal defendant can form the basis of a *Brady* claim.  U.S. v. Lee, 399 F.3d 864, 865 (7th Cir. 2005)(*"Brady* . . . deals with the concealment of exculpatory evidence unknown to the defendant).

**1.   Plaintiff does not state a due process claim based on the concealment of the State's timed trial of the bypass route, because Plaintiff already knew about the bypass route.**

The court orders in Plaintiff's postconviction proceedings show that Plaintiff knew of the bypass route and presented evidence of it in his defense.  The Illinois Supreme Court recounted in its order that Plaintiff had presented evidence at trial of the quicker bypass route.  People v. Beaman, 229 Ill.2d 56, 81 (2008).  The order recounts that Plaintiff's investigator

conducted his own timed trials of the bypass route, which were presented

in Plaintiff's defense.  Id. at 68.  Similarly, the Illinois Circuit Court order

denying Plaintiff's petition for post-conviction recounted that Plaintiff had

testified at the trial that he had taken the quicker bypass route home from

the bank.  (d/e 26-1, Ex. A, 6/14/05 Order p. 17).   The Illinois Appellate

Court affirmed that denial, reiterating the Circuit Court's conclusion that

Plaintiff had the grand jury transcripts, in which Freesmeyer had testified

about the bypass route.   People v. Beaman, 368 Ill.App.3d 759, 767-68

(4th Dist. 2006)(reversed)(Justice Cook, dissenting).

    Judicial notice can be taken of the existence of these orders, though

not of the truth of the matters asserted in those orders.  Guaranty Bank v.

Chubb Corp., 538 F.3d 587, 591 (7th Cir. 2008)("[A] court is of course

entitled to take judicial notice of judicial proceedings, . . . ."); Doss v.

Clearwater Title Co., 551 F.3d 634, 640 (7th Cir. 2008)(judicial notice of

public record can be taken without converting Rule 12(b)(6) motion to

summary judgment motion); General Elec. Capital Corp. v. Lease

Resolution Corp., 128 F.3d 1074, 1082 n. 6 (7th Cir. 1997)("We agree that

courts generally cannot take notice of findings of fact from other

proceedings for the truth asserted therein because these findings are

disputable and usually are disputed.").  The orders show that Plaintiff presented evidence in his defense that he had taken the quicker bypass route home from the bank.[1]

Even without the orders, though, Plaintiffs allegation that the withholding of Freesmeyer's timed bypass trial prejudiced Plaintiff's defense is implausible on its face.  Plaintiff already knew about the route bypass.  Nothing prevented Plaintiff from offering testimony about his own timed trial and/or which route he drove home.  Thus, the evidence was not suppressed because it was otherwise available to Plaintiff.

In sum, the exculpatory evidence here was that a quicker route existed, but Plaintiff already knew that.  Defendants' failure to disclose their own knowledge of that fact does not make out a *Brady* violation.  Nor can Freesmeyer's alleged misleading trial testimony be shoe-horned into a *Brady* claim.[2]

_____

[1]Defendants contend that collateral estoppel bars Plaintiff from asserting that Freesmeyer's timed trial of the bypass route was not disclosed.  The Court does not believe collateral estoppel fits here, though, because this issue was discussed in postconviction proceedings in the context of whether the State had an obligation to correct allegedly misleading testimony, not whether the timed trial had been disclosed.  And, the Illinois Supreme Court expressly declined to address the issue at all.

[2]This claim was framed in the Illinois Circuit and Appellate Court as a failure to correct Freesmeyer's testimony as false or misleading, apparently because Freesmeyer testified only about the direct route at trial, without mentioning the bypass route.  Beaman argued in postconviction proceedings that this testimony gave the jury the false impression that the State did not know of any faster route.  People v. Beaman, 368

In sum, the Court cannot discern a plausible *Brady* claim based on the nondisclosure of Defendant Freesmeyer's timed trial of the bypass route. Accordingly, the Court will recommend that Plaintiff's *Brady* claims be dismissed to the extent they are premised on nondisclosure of the timed trial of the bypass route.

**2.  Plaintiff *does* state a due process claim based on the concealment of the John Doe information which pointed to Doe as a viable alternative suspect.**

Unlike the bypass route, a plausible inference does arise that withholding information about John Doe was a *Brady* violation. The reasons why are already set forth in the Illinois Supreme Court's order reversing Plaintiff's conviction. People v. Beaman, 229 Ill.2d 56 (2008). Doe had motive and an opportunity to commit the murder. The concealed information about John Doe arguably showed his propensity for violence, his erratic behavior due to steroids, and his lack of credibility. This information could have been used to paint Doe as a viable alternative suspect at trial, creating reasonable doubt as to Plaintiff's guilt. Defendants

---

Ill.App.3d at 641. The Illinois Appellate Court rejected this argument, reasoning that Beaman had the grand jury transcripts, could have cross-examined Freesmeyer, and had presented his own evidence of the faster route. Id. at 642. Failing to correct misleading testimony is not a *Brady* claim.

do not seem to dispute that these allegations state a claim at the notice pleading stage.

The question, then, is not whether Plaintiff states a claim, but who he can proceed against on the claim.

### a) Plaintiff states a due process claim against Defendant Brown.

Defendant Brown was a McClean County Deputy Sheriff [3] who allegedly "participated in, supervised, and ratified the decisions taken in the course of the Lockmiller murder investigation." (Complaint ¶ 15). Brown argues that, other than this allegation, there are no supporting factual allegations to suggest that Brown was personally involved in the alleged concealment.

In the Court's opinion, Brown expects too much from Plaintiff at this stage. It is true that Plaintiff must show that Brown was "'personally responsible for the deprivation of a constitutional right.'" Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001), *citing* Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001). It is also true that complaints can be dismissed at the rule 12(b)(6) stage for failing to contain

---

[3]Brown was incorrectly identified in the Complaint as a Normal police department lieutenant. (d/e 20, p. 6, n.1; d/e 32, p. 3, n.2).

sufficient factual allegations to infer personal responsibility, as demonstrated by the cases cited by Brown.

Here, though, Plaintiff alleges that Brown was personally involved and supervised the investigation, and that he ratified the decisions.  He was "a senior law enforcement official who occupied a position of authority in the Lockmiller investigation . . . ."  (d/e 32, p. 25, n. 6).  This allows a plausible inference that Brown could bear personal responsibility for the withholding of the John Doe information.  Thus, the allegations give notice of the claim against Brown and suggest a plausible right to relief.  Discovery may ultimately show that Brown bears no personal responsibility, but that determination belongs at summary judgment.

### b)  Plaintiff states a due process claim against the Town of Normal individual defendants.

The Town of Normal Defendants (the "Town defendants") consist of Defendants Freesmeyer, Hospelhorn, Warner, Zayas, and the Town of Normal.  The individual Town defendants were police detectives  who all allegedly participated in the murder investigation.

"While most commonly viewed as a prosecutor's duty to disclose to the defense, the [*Brady*] duty extends to the police and requires that they similarly turn over exculpatory/impeaching evidence to the prosecutor,

thereby triggering the prosecutor's disclosure obligation." Carvajal v.

Dominguez, 542 F.3d 561, 566 (7th Cir. 2008).

      The Town defendants argue that Plaintiff has pled himself out of court

by alleging that all the defendants were involved in the investigation and

failed to disclose the John Doe evidence.  This must mean, they contend,

that the evidence was disclosed to the prosecuting attorneys, discharging

the police officers' obligation.

      This argument may ultimately prove correct, but the Court believes

that dismissal of the Town defendants at this stage  would be premature.  A

developed factual record is necessary to determine what each defendant

knew about the John Doe information.  The Court cannot determine from

the allegations alone that the police detectives gave all the exculpatory

information to the prosecutors.  And, requiring Plaintiff to know this

information without any discovery is expecting too much at the notice

pleading stage.  As Plaintiff puts it,

> The exact sequence of events that led to the suppression of
> evidence is not yet clear.  What is clear, however, is that
> *someone* was responsible.  The litigation should be allowed to
> proceed to discovery in order to sort out whether the
> suppression of evidence was at the behest of the police
> defendants, the prosecutor defendant, or both acting in concert.
> (d/e 32, p. 28).

The police officers also contend that the Illinois Supreme Court already found that the prosecutors had all the John Doe evidence, but that is not what the case says.  The case only recounts an exchange between the prosecutor and defense counsel at trial about John Doe, in which the prosecutor told the court that "Doe had 'nothing to do with the case.'" <u>Beaman</u>, 229 Ill.2d at 60.  As Plaintiff points out, that statement could actually support an inference that the police officers did not disclose the exculpatory information to prosecutors.[4]

**c) A determination of absolute and qualified immunity for Defendants Souk and Reynard would be premature.  At this point, a plausible inference arises that some of their actions were investigatory and thus not entitled to absolute immunity.  The Seventh Circuit's decision in <u>Buckley</u> does not necessarily mandate qualified immunity.**

Defendants Souk (the Assistant State's Attorney at the time) and Reynard (the State's Attorney at the time) argue that they are entitled to absolute immunity.

---

[4]The Court realizes that this scenario would be inconsistent with the scenario that the police officers conspired with the prosecutors, but there is nothing wrong with alternative pleading.  Fed. R. Civ. P. 8; <u>Pickrel v. City of Springfield</u>, 45 F.3d 1115, 1118 (7th Cir. 1995)("At this stage complete internal consistency of claims is just not required.").  Plaintiffs cannot be expected to know exactly what happened without discovery.

A prosecutor enjoys absolute immunity for actions "intimately associated with the judicial phase of the criminal process," such as evaluating evidence and determining whether or not to bring charges or prosecute.  Imbler v. Pachtman, 424 U.S. 409, 430 (1976)(absolute immunity for initiating and presenting case); Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993)(prosecutor's absolute immunity extends to "the [prosecutor's] professional evaluation of evidence assembled by the police"); Burns v. Reed, 500 U.S. 478 (1991)(absolute immunity for presenting false testimony in probable cause hearing); Spiegel v. Rabinovitz, 121 F.3d 251 (7th Cir. 1997)(prosecutor absolutely immune for alleged intentionally incomplete assessment of case).

However, only qualified immunity is available to prosecutors performing administrative or investigatory functions.  For example, in Buckley v. Fitzsimmons, 509 U.S. 259 (1993), the Supreme Court held that prosecutors were not entitled to absolute immunity for their investigatory actions, which included shopping around until they found an alleged disreputable expert to connect a bootprint left at the murder scene with the plaintiff's boots.  The Supreme Court pointed out that the prosecutors did not have probable cause to arrest anyone or initiate judicial proceedings

when they were expert shopping.  "[T]heir mission at that time was entirely

investigatory in character."  509 U.S. at 274.

> There is a difference between the advocate's role in evaluating
> evidence and interviewing witnesses as he prepares for trial, on
> the one hand, and the detective's role in searching for the clues
> and corroboration that might give him probable cause to
> recommend that a suspect be arrested, on the other hand.
> When a prosecutor performs the investigative functions
> normally performed by a detective or police officer, it is "neither
> appropriate nor justifiable that, for the same act, immunity
> should protect the one and not the other."

Id. at 273 (quoted cite omitted).[5]  The Supreme Court also found that

statements to the media were not protected by absolute immunity because

they "have no functional tie to the judicial process."  509 U.S. at 277; *see*

*also* Kalina v. Fletcher, 522 U.S. 118 (1997)(preparation and filing of

charging documents protected by absolute immunity, but not prosecutor's

sworn statements in certificate for determining probable cause); Burns v.

Reed, 500 U.S. 478 (1991)(no absolute immunity for giving legal advice to

police).

Applying this functional analysis, the Court cannot confidently

conclude at this stage that Souk and Reynard are entitled to absolute

---

[5]The Supreme Court was quick to point out that "[o]f course, a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards."  209 U.S. at 275 n. 5.

immunity for <u>all</u> their actions.  Plaintiff alleges that Souk and Reynard were

substantially involved in the investigation for months before charges were

filed against Plaintiff.  Plaintiff posits that Souk and Reynard, during this

investigatory phase, could have directed police officers not to include the

John Doe information in their investigative reports:

> Plaintiff's allegations that Souk and Reynard were directly
> involved in the Lockmiller murder investigation raise the
> reasonable inference that they were aware of the strong
> exculpatory evidence developed throughout the course of that
> investigation and that they either directed the investigators to
> omit that information from their reports or were in some other
> way involved in the purposeful omission of that information from
> any sort of investigative record.

(d/e 32, p. 11).   At this point, it is far from clear exactly who did what and

when.  Without a firm grasp of those facts, an analysis of absolute

immunity is guesswork.  *See* <u>Bembenek v. Donohoo</u>, 355 F.Supp.2d 942,

952 (E.D. Wis. 2005)(application of absolute immunity premature where

record did not yet show whether misconduct occurred while functioning as

advocate).

In the alternative, the prosecutors argue that they are entitled to

qualified immunity, citing <u>Buckley v. Fitzsimmons</u>, 20 F.3d 789 (7th Cir.

1994).  In that case, the Seventh Circuit, on remand from the Supreme

Court, determined that the plaintiff did not state any federal claims based

on alleged payments to and coercion of witnesses, shopping for unreliable expert testimony, or making defamatory statements to the press.[6]  The Seventh Circuit acknowledged that, per the Supreme Court's opinion, absolute immunity did not attach to these actions.  However, the Seventh Circuit reasoned that these actions, by themselves, did not violate the plaintiff's constitutional rights.  Paying witnesses was a common practice, not unconstitutional.  Shopping for and hiring a "practitioner of junk science" did not violate the Constitution.  Id. at 794, 796.  Coercing a witness was a constitutional violation of the witness's rights, not the criminal defendant's.  Id. at 794.  Since none of these actions violated the Constitution by themselves, they did "not become actionable because they [led] to injurious acts for which the defendants possess absolute immunity."  Id. at 789.  In other words, the constitutional injury, if any, did not occur until the alleged infirm evidence was introduced at trial by prosecutors, actions protected by absolute immunity.  Id. at 797.  The Seventh Circuit therefore concluded that "[w]hat this complaint alleges does not state a

---

[6]The Supreme Court in Buckley assumed for purposes of its order only that the conduct alleged actually stated a claim for constitutional violations, leaving the question open for exploration on remand.  509 U.S. at 261.

claim under the Constitution, let alone suggest a violation of clearly

established rights."  Id. at 794.  The Seventh Circuit also remarked:

> And what we have said . . . is equally true with respect to
> Buckley's contention that the prosecutors 'suppressed' a
> favorable evaluation of the boot print by a sergeant of the
> DuPage Court Sheriff's Office (i.e., that they violated their
> duties under *Brady v. Maryland* . . .) . . . .  These wrongs, if they
> are wrongs at all, occurred at trial (*Brady* does not require
> pretrial disclosure, . . .) and do not support an award of
> damages.

Id. at 797.

Plaintiff contends that the Seventh Circuit's Buckley decision should

not be followed, pointing out other Circuits that have disagreed with

Buckley, and also pointing to remarks by Supreme Court Justice Thomas

that he believes Buckley's approach is incorrect.  *See* Michaels v. McGrath,

531 U.S. 1118, 1119 (2001)(Justice Thomas, dissent from denial of

certiorari).  This option, of course, is not available.

The Court is not sure, however, that the Seventh Circuit's Buckley

opinion requires the application of qualified immunity here.  That decision

rests more on whether the plaintiff stated a claim for a constitutional

violation, the first part of the qualified immunity analysis.  Since Buckley

stated no claim, continuing the qualified immunity analysis was

unnecessary.

1:10-cv-01019-JBM-BGC   # 35   Page 22 of 36

Here, unlike <u>Buckley</u>, the allegations do state a claim.  Plaintiff does not challenge shopping for and hiring disreputable experts, conduct which by itself does not violate the Constitution, and, in any event, is easily assailable at trial.  The allegations here are more serious:  evidence developed during the investigation about a viable alternative murder suspect was concealed, evidence that could have created reasonable doubt of Plaintiff's guilt.  As Plaintiff points out, it is possible that the prosecutors directed or advised investigators, during the investigatory phase, to exclude this exculpatory evidence from reports.  "Immunity for prosecutorial deeds does not whitewash wrongs completed during the investigation."  <u>Buckley</u>, 20 F.3d at 796.  A prosecutor's initiation of criminal proceedings would not whitewash constitutional violations the prosecutor committed during the investigatory phase.

The prosecutors next argue that Plaintiff's constitutional right to the information was not clearly established because the Illinois Circuit Court and Illinois Appellate Court found no constitutional violation.  The Illinois Supreme Court, though, concluded that those lower courts were wrong. This is not a "'split among courts'" for the qualified immunity analysis. (d/e 21, p. 17, *citing* <u>Denius v. Dunlap</u>, 209 F.3d 944, 951 (7th Cir. 2000)).

An overturned lower court decision does not reflect uncertainty in the law; it reflects an incorrect decision.  A "split among courts" means a split between the Circuit Courts, or perhaps among different district courts, as the cases cited by the prosecutors demonstrate.

Additionally, Plaintiffs are not required to plead facts to defeat qualified immunity, and here there are not enough facts to make a confident qualified immunity determination:

> . . . a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds.  *See* Jacobs v. City of Chicago, 215 F.3d 758, 765 n. 3 (7th Cir.2000). Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: "[T]he plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity." Id. As noted in Jacobs' concurrence, "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal .... and when defendants do assert immunity it is essential to consider facts in addition to those in the complaint." Id. at 775 (Easterbrook, J., concurring).

Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001).  A more developed factual record is needed to determine how the failure to disclose came about, and who was responsible for it.  Accordingly, determinations of immunity are premature, in the Court's opinion.

## B.  Count II: Conspiracy

The Town Defendants argue that a 42 U.S.C. Section 1983 conspiracy is "not conceptually possible."  They contend that "[o]nce prosecutors have knowledge of the Brady material, police have no further role in making any disclosures."  (d/e 26, p. 9).  They posit that "there could never be an actionable conspiracy between police and prosecutors to withhold Brady material."  (d/e 26, p. 10).  Plaintiff concedes that, generally, a police officer's disclosure of exculpatory evidence to a prosecutor will satisfy the officer's Brady duties.  However, Plaintiff argues that "[i]f police officers and prosecutors subsequently agree to conceal evidence and the police officers play an affirmative role in the concealment, the police officers violate the due process right to exculpatory evidence."  For example, if the police officers notified prosecutors and then agreed to "scrubbing [the] police reports," (d/e 32, p. 33),  the police would not be insulated from liability for that concealment.

Neither party cites any case on point, but Plaintiff's argument makes logical sense.  A police officer cannot insulate himself from liability by disclosing evidence to the prosecutors and then taking affirmative steps in conspiracy with the prosecutors to remove any trace of that evidence from

police reports.  Of course it is not possible to determine yet if this is what happened, since Plaintiff has not had an opportunity to conduct discovery, but without that discovery, Plaintiff cannot be expected to flesh out the details of who is responsible for the concealment.

Additionally, Plaintiff is correct that "as a practical matter, . . . conspiracy simply broadens the scope of liability under § 1983 to include individuals who were part of a conspiracy but did not act directly to deprive a plaintiff of his or her constitutional rights."  Libbra v. City of Litchfield, 893 F.Supp. 1370, 1375 (C.D. Ill. 1995).  To state a civil conspiracy claim under § 1983 the plaintiff must allege that the defendants 1) agreed with each other to deprive the plaintiff of constitutional rights; and 2) the plaintiff suffered "'actual deprivations of those rights in the form of overt acts in furtherance of the agreement.'"  Id., *quoting* Scherer v. Balkema, 840 F.2d 437, 442 (7th Cir. 1988).  Plaintiff's allegations allow a plausible inference for a conspiracy theory of relief.

## C.   Count III: Failure to Intervene

Plaintiff alleges that "during the constitutional violations described above, one or more of the individual Defendants, and other unknown individuals, stood by without intervening to prevent the misconduct."

(Complaint para. 72).  The Town Defendants argue that this fails to state a claim because "there is no venue for police to intervene if they have the knowledge that the prosecutor is violating Brady."  They assert that they had no duty to monitor or report a prosecutor's conduct.

The Court agrees that there is no legal basis for holding police officers liable for a prosecutors' failure to disclose exculpatory evidence, if those officers have already divulged all the exculpatory evidence to those prosecutors and played no role in its concealment.  Harris v. Kuba, 486 F.3d 1010, 1014 (7th Cir. 2007)(Brady "obligation extends to police officers, insofar as they must turn over potentially exculpatory evidence when they turn over investigative files to the prosecution.").

However, Plaintiff's claims are not necessarily that narrow.  It could be that some of the police officers were aware of the concealment and had a realistic opportunity to insist that the John Doe information be included in the investigative reports.  Though Plaintiff may have an uphill battle, the Court believes that this claim should remain in the case for further development.

## II.     State Claims

Plaintiff has no state law claims based on the concealment of the bypass route timed trial, for the same reasons that Plaintiff has no federal claims.  Accordingly, the discussion below pertains only to the nondisclosure of the John Doe information.

### A.  Count IV: Malicious Prosecution

A malicious prosecution claim requires: "'(1) the commencement or continuance of an original criminal or civil judicial proceeding . . .; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages . . .'" *See* Swick v. Liautaud, 169 Ill.2d 504, 662 N.E.2d 1238, 1242 (1996)(citations omitted).

Defendants argue that Plaintiff fails to allege that the criminal proceeding terminated in his favor because declining to pursue a retrial is not indicative of Plaintiff's innocence.  Swick, 169 Ill.2d at 512 ("malicious prosecution action cannot be predicated on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused.").  The Court disagrees.  The Illinois Supreme Court found that the State failed to disclose critical information about a

viable alternative suspect, remarking that Plaintiff's conviction had heavily relied on the *absence* of a viable alternative suspect.  In fact, the Illinois Supreme Court noted that this viable alternative suspect arguably had more of an opportunity to commit the crime than Plaintiff, because John Doe lived only 1 ½ miles away from Lockmiller, as compared to Plaintiff's 140 miles.  People v. Beaman, 229 Ill.2d 56, 66 (2008).[7]  A plausible inference arises that the charges against Plaintiff were dropped because the prosecution did not have enough evidence to show Plaintiff committed the murder.

The police officers argue that they cannot be liable for malicious prosecution because they did not initiate or conduct the prosecution.  They cite Fabiano v. City of Palos Hills, 336 Ill.App.3d 635, 647 (1st Dist. 2002), which states, "a defendant is considered to have commenced criminal proceedings if he 'initiated a criminal proceeding or his participation [was] of so active and positive a character as to amount to advice and cooperation.'" (*quoted cite omitted*). That determination would be premature here.  Plaintiff alleges that the police officers influenced

---

[7]"[T]he timeline required petitioner to commit the offense and stage the crime scene in an extremely quick and efficient manner. . . . It is clear that the evidence of petitioner's opportunity to commit the murder is not as strong as that against Doe." People v. Beaman, 229 Ill.2d at 79.

prosecutors to start and continue criminal proceedings against Plaintiff. (Complaint ¶ 77)("The individual Normal police officer Defendants made statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings.").   Additionally, in <u>Fabiano</u> the malicious prosecution claim against a city and its police chief actually survived summary judgment.

The police officers also argue that there was probable cause to prosecute Plaintiff, which would scotch the malicious prosecution claim. That determination is also premature.  Arguments about the strength of competing inferences belong at the summary judgment stage.  A plausible inference may exist that probable cause was lacking based on the alleged intentional omission of the Doe information.

The Court also cannot say that the prosecutors are entitled to state law prosecutorial immunity on the state law malicious prosecution claim (referred to also as public official immunity), for the same reason the Court reached that conclusion on the federal claims.

## B.  Count VI: Intentional Infliction of Emotional Distress (IIED)

The parties agree that IIED is a "continuing tort," which means that the statute of limitations begins running when the last injury occurs or the

tortious conduct stops.  Feltmeier v. Feltmeier, 207 Ill.2d 263 (2003).

Defendants contend that this claim is barred by the one year statute of limitations on state claims against local government entities, because it accrued at the latest in 1995, when Plaintiff was sentenced.   The Court does not believe that the case cited, Evans v. City of Chicago, 443 F.3d 916 (7th Cir. 2006), necessarily stands for that proposition.  In Evans, the plaintiff alleged that police officers harassed him and retaliated against him for his public accusations against them.  This harassment included threatening him, arresting him without probable cause, mistreating him after the arrests, and repeatedly confronting him at his home and on the streets.  Id. at 921.  He sued for, among other claims, malicious prosecution and intentional infliction of emotional distress.

In Evans, the plaintiff's malicious prosecution claim was dismissed because he failed to show that the criminal proceedings were terminated in his favor, a decision which was not appealed.  434 F.3d at 923, 924.  The IIED claim, in contrast, was dismissed as barred by the statute of limitations and appealed.  Id.  The Seventh Circuit confirmed the dismissal of the IIED claim on statute of limitations grounds, finding that "it is undisputed that the vast majority of events giving rise to Evans' complaint

took place in 1997," yet he did not file suit until 2001.  443 F.3d 916.  It was "undisputed that the last, confirmed interaction between Evans and the police officers . . . took place sometime in December of 1997."  Id. at 935.

The IIED claim in Evans was not premised on malicious prosecution, but on misconduct outside of those prosecutions which all clearly occurred in 1997.  In contrast to Evans, Plaintiff maintains that his IIED claim is "premised on a wrongful prosecution."  (d/e 32, p. 40).  As Plaintiff points out, some Northern District courts have concluded that an IIED claim based on the same facts as a malicious prosecution claim accrues upon favorable termination of the criminal proceedings.  *See, e.g.,* Carroccia v. Anderson, 249 F.Supp.2d 1016, 1028 (N.D. Ill. 2003)(". . . courts in this district have consistently held that IIED claims based on facts alleged in parallel claims for malicious prosecution accrue only when state criminal proceedings are terminated.")(IIED claim accrued on acquittal);[8] Miller v. Whalen,

_____

[8]The Court found some unreported Northern District courts that have found that Carroccia is no longer good law in light of the Seventh Circuit's opinions in Evans. Mosley v. City of Chicago, 2009 WL 3097211 * 10 (N.D. Ill. 2009);Boyd v. Mack, 2009 WL 3320453 * 3 (N.D. Ill. 2009).  As discussed above, though, the Court does not believe that Evans involved an IIED claim that paralleled a malicious prosecution claim.

2009 WL 2436593 * 10 (N.D. Ill. 2009)(IIED claim accrued when conviction vacated)(not reported in F.Supp.2d).

Plaintiff also argues that requiring him to file his IIED claim before the charges were dropped would run afoul of the principles in Heck v. Humphrey, 512 U.S. 477 (1994).  The Seventh Circuit recently agreed in Parish v. City of Elkhart, — F.3d —, 2010 WL 2977411 (7th Cir. 2010), but was applying Indiana law, not Illinois law.   Parish v. City of Elkhart, — F.3d —, 2010 WL 2977411 (7th Cir. 2010)(applying Indiana law, IIED claim based on fabricated evidence that led to conviction accrued when charges were dropped);[9] *but cf.* Brooks v. Ross, 578 F.3d 574, 580 (7th Cir. 2009) (IIED claim arising from an alleged false indictment that resulted in acquittal accrued on the date of indictment, where "single overt act" was indictment). Neither party cites Parish or discusses whether Illinois has adopted Heck's reasoning like Indiana has.

It makes sense, at least to this Court, that an IIED claim based on the same facts as a malicious prosecution claim cannot accrue until the malicious prosecution claim itself accrues, which would be when the criminal proceedings terminate in a defendant's favor.  Sneed, 146 F.2d

---

[9]In contrast, claims such as false arrest accrue at the time of arrest, not when the conviction is overturned.  Wallace v. Kato, 549 U.S. 384 (2007).

at 481.  Otherwise, a verdict in favor of a plaintiff on such an IIED claim could effectively invalidate the conviction and collaterally estop a defense on the malicious prosecution claim.  Thus, to the extent Plaintiff's IIED claim is based on the same allegations as the malicious prosecution claim, the Court does not believe that the IIED claim accrued until the charges against Plaintiff were dropped on January 29, 2009.  A more developed record may show that part or all of the IIED claim is time-barred, but that determination cannot be made on this record.

### C.  Count V: Civil Conspiracy

Defendants argue that the civil conspiracy claim must fail because Plaintiff's IIED and malicious prosecution claims must be dismissed.  As discussed above, the Court is not persuaded by Defendants' arguments to dismiss the IIED and malicious prosecution claims.  Accordingly, this claim stays in as well.

### D.  Counts VII (respondeat superior) and VIII (indemnification)

McClean County argues that it cannot be liable under respondeat superior because Defendants Reynard and Souk are State employees, not County employees.  Plaintiff does not address this argument.  The Court agrees that it does not appear that McClean County can be liable on a

respondeat superior basis for the State's Attorneys.  Ingemunson v. Hedges, 133 Ill.2d 364, 369-70, 549 N.E.2d 1269, 1270-71 (1990)(state's attorneys are state officials); Biggerstaff v. Moran, 284 Ill.App.3d 196 (3rd Dist. 1996)(county has no respondeat superior liability for ASA, since ASA is not county employee).  Nor does it appear that McClean County would have respondeat superior liability for Defendant Brown, the Deputy Sheriff, though the County does not make the argument.  *See, e.g.,* Moy v. County of Cook, 159 Ill.2d 519 (1994)(county has no respondeat superior liability for Sheriff).  The Court will therefore recommend that the respondeat superior claims against McClean County be dismissed.

However, McClean County does not address whether it could have indemnification responsibilities for Brown, Souk or Reynard.  *See, e.g.,* 55 ILCS 5/5-1002 (county shall indemnify sheriff or deputy); Sherry v. State of Illinois, 55 Ill.Ct.Cl. 437 (2002)(counties, not State, are responsible for paying tort claims against state's attorneys and sheriffs).  The Court will not address those issues sua sponte.  Accordingly, the Court will recommend that McClean County stay in the case on the indemnification claims.

As for the Town of Normal, it argues that there is no respondeat superior liability on the federal constitutional claims, and that is correct.

*See* <u>Monell v. Dep't of Soc. Servs</u>, 436 U.S. 658, 694 (1978).  Plaintiff is not pursuing a <u>Monell</u> claim, though.  The respondeat superior and indemnification counts are both based on the state law claims.  (Complaint, Counts VII and VIII, titling counts as state law claims).  The Town of Normal does not address the merits of the respondeat superior claim against it under state law, or its duty to indemnify under state law.  *See* 745 ILCS 10/2-302 (local public entity's duty to defend and/or indemnify); 745 ILCS 10/9-102 (local public entity directed to pay tort judgment against employee).  Accordingly, the Court will recommend that the Town of Normal remain in the case for further development of these claims.

WHEREFORE, the Court RECOMMENDS that the motions to dismiss be granted in part and denied part.  (d/e's 19, 25).  The Court recommends dismissal of all claims (state and federal) based on the alleged concealment of the timed trial of the bypass route.  The Court further recommends dismissal of the respondeat superior claims against McClean County.  The Court otherwise recommends that the motions to dismiss be denied.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after ECF service of

a copy of this Report and Recommendation. <u>See</u> 28 U.S.C. § 636(b)(1).

Failure to timely object will constitute a waiver of objections on appeal.

<u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).

See also Local Rule 72.2.

ENTER:    September 10, 2010


_____*s/ Byron G. Cudmore*_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE