# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| ALAN BEAMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-cv-1019 |
| | ) | |
| JAMES SOUK, CHARLES REYNARD, | ) | |
| TIM FREESMEYER, ROB | ) | |
| HOSPELHORN, DAVE WARNER, JOHN | ) | |
| BROWN, FRANK ZAYAS, MCLEAN | ) | |
| COUNTY ILLINOIS, and TOWN OF | ) | |
| NORMAL ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

## O P I N I O N and O R D E R

Before the Court are the Motion to Dismiss filed by Defendants, James Souk, Charles Reynard, John Brown, and McLean County (Doc. 19), the Motion to Dismiss filed by Defendant, Tim Freesmeyer, Rob Hospelhorn, Dave Warner, Frank Zayas, and Town of Normal (Doc. 25), the Report and Recommendation issued by Magistrate Judge Cudmore (Doc. 35), the Objection filed by Defendants Souk, Reynard, Brown, and McLean County (Docs. 39 and 42), the Objection filed by Defendants Freesmeyer, Hospelhorn, Warner, Zayas, and Town of Normal (Doc. 40), and the Response to Objections filed by Plaintiff, Alan Beaman (Docs. 44 and 45).

For the reasons set forth below, the Report and Recommendation (Doc. 35) is ACCEPTED IN PART AND REJECTED IN PART and the Motions to Dismiss (Docs. 19 and 25) are GRANTED IN PART AND DENIED IN PART.

# BACKGROUND[1]

In 1995, Plaintiff, Alan Beaman, was convicted and sentenced to 50 years of incarceration for first degree murder in the 1993 death of Jennifer Lockmiller. The case was investigated by Timothy Freesmeyer, Rob Hospelhorn, and Dave Warner, detectives in the City of Normal Police Department, Frank Zayas, a lieutenant in the Normal Police Department, and John Brown, a McLean County Deputy Sheriff.[2] Plaintiff was prosecuted by Charles Reynard, the McLean County State's Attorney, and James Souk, an Assistant State's Attorney. Plaintiff's conviction was overturned by the Illinois Supreme Court on May 22, 2008. *People v. Beaman*, 890 N.E.2d 500 (Ill. 2008). Plaintiff now has filed an eight count Complaint in this Court alleging violations of his Due Process Rights in addition to various state law claims of malicious prosecution and intentional infliction of emotional distress.

The evidence against Plaintiff was circumstantial, there being no witness or direct evidence to the crime. Lockmiller was killed in her apartment located in Normal, Illinois. Her body was not discovered immediately and it was not possible to pinpoint the exact time of death; however, investigators determined that she was murdered around 12:00 p.m. on August 25, 1993. She had been both stabbed with scissors and strangled with the cord from a clock radio (strangulation was the cause of death). There was no evidence of a struggle or forced entry into the apartment. Defendant Freesmeyer was the lead detective on the case. Plaintiff further alleges

---

[1] All facts are taken from the Complaint (Doc. 1) unless otherwise specified.

[2] The Complaint incorrectly identifies Brown as a lieutenant in the Normal Police Department.

that the Defendant attorneys, Reynard and Souk, were "intimately involved throughout the course of the investigation." Plaintiff allegedly became a suspect because he was an ex-boyfriend, having broken up with Lockmiller a month prior to her death, and because there were no other viable suspects. At the time of the death, Plaintiff lived in Rockford, Illinois, 140 miles from Normal. Investigators theorized that Plaintiff drove to Normal on August 25, 1993 after visiting a bank in Rockford at 10:11 a.m., killed Lockmiller at 12:00 p.m., and then drove back to Rockford where he was observed by his mother (with whom he was living at the time) in his room at 2:16 p.m.

Plaintiff's alibi consisted of two phone calls that he made at 10:37 a.m. and 10:39 a.m. from his home in Rockford to a church - the timing of the calls would have made it "practically impossible" for Plaintiff to have driven to Normal in order to kill Lockmiller at 12:00 p.m. Freesmeyer debunked this alibi by testifying at trial that it would have been impossible for Plaintiff to have driven from the bank to his home in time to make the phone calls (that is, somebody else must have made the calls). Freesmeyer's testimony was based on timed driving runs that he did from the bank to Plaintiff's home via a "direct route"; Plaintiff alleges that both Souk and Reynard were involved in or participated in these trial runs. Freesmeyer and Souk also affirmatively represented to the grand jury and in pretrial proceedings that no other persons were implicated in the murder.

Plaintiff believes that his Due Process Rights were violated when Defendants, individually, jointly, and/or in furtherance of a conspiracy, withheld

"material exculpatory evidence" from Plaintiff and his counsel during his criminal trial. This evidence includes reports documenting a second timed driving run (hereinafter "bypass route") conducted by police, of an alternate route from the bank to Plaintiff's home which showed that Plaintiff could have made it home in time to make the phone calls to the church. Plaintiff also alleges that Defendants withheld evidence of another person, John Doe, who also could have committed the murder. According to Plaintiff, Defendants knew that Doe was also an ex-boyfriend of Lockmiller, that he sold drugs to Lockmiller in the past, that she owed him money for the drugs, that he was evasive and nervous during interviews with police, that he had no alibi during the time of the murder, that he failed to complete a polygraph examination, that he had been arrested for domestic battery of his current girlfriend, that he expected to rekindle his relationship with Lockmiller, and that he was taking steroids which made him erratic. Plaintiff states that he did not become aware of this evidence until post-conviction proceedings. Plaintiff further alleges that Defendants violated his Due Process Rights by failing to intervene to prevent constitutional violations. In his allegations, Plaintiff groups Defendants together by alleging that they acted "individually, jointly, and in conspiracy."

Plaintiff also has alleged state law claims of malicious prosecution, that Defendants engaged in a conspiracy "to accomplish an unlawful purpose by unlawful means," and, intentional infliction of emotional distress. Finally, Plaintiff asserts that McLean County is liable, under a theory of respondeat superior, for the

torts committed by its employees and that the Town of Normal and McLean County must indemnify the individual Defendants.

In summary, Plaintiff alleges that all Defendants violated Due Process by withholding exculpatory evidence with respect to John Doe and the bypass route (Count 1), that they engaged in a conspiracy to deprive Plaintiff of this exculpatory evidence in violation of Due Process (Count II), that these Defendants failed to intervene to prevent constitutional violations in violation of the Fourth Amendment (Count III), that they maliciously prosecuted Plaintiff in violation of state law (Count IV), that they engaged in a civil conspiracy in violation of state law (Count V), that they intentionally inflicted emotional distress (Count VI), and claims for respondeat superior (Count VII – against McLean County and Town of Normal), and indemnification (Count VIII).

## REPORT AND RECOMMENDATION

Each of Defendants filed Motions to Dismiss (Docs. 19 and 25). Defendants McLean County, Reynard, Souk, and Brown argued that Plaintiff fails to state a § 1983 claim and that Defendants Reynard and Souk are entitled to absolute or qualified immunity. They further argued that once the § 1983 claims are dismissed, the state law claims should also be dismissed, that the Plaintiff otherwise fails to state a claim, and that the intentional infliction of emotional distress claim is time-barred. Finally, these Defendants assert that once the individual Defendants are dismissed, McLean County should also be dismissed. Defendants Town of Normal,

Freesmeyer, Hospelhorn, Warner, and Zayas make similar arguments with respect to the claims against them.

In considering these arguments, Magistrate Judge Cudmore found that Plaintiff failed to state a due process claim with respect to the bypass route. Judge Cudmore took judicial notice of state court orders that recounted that Plaintiff himself presented evidence at his trial of the bypass route. Judge Cudmore concluded that the failure of the prosecution to disclose such information did not make out a *Brady v. Maryland*, 373 U.S. 83 (1963), claim.

Judge Cudmore went on to find, however, that Plaintiff did make out a claim with respect to the information withheld concerning an alternate suspect, John Doe. Judge Cudmore further considered Defendants' arguments that Plaintiff failed to state a claim against each individual Defendant. In particular Judge Cudmore found that an inference arises that Defendant Brown was personally involved in the constitutional deprivation because of allegations that he supervised and ratified the decisions of the inferior officers. With respect to the other police officers, Judge Cudmore found that the Complaint could be read to claim that the officers failed to turn over *Brady* material even though there is also an allegation that all Defendants acted in concert – allegations sufficient to make out a conspiracy claim. The failure to intervene claims further were found to be sufficient even though they are based on alternative, and mutually exclusive, assertions for relief. *See* FED.R.CIV.P 8(d)(3) (allowing for inconsistent claims).

With respect to Reynard's and Souk's claim of immunity, Judge Cudmore noted that absolute immunity does not protect prosecutors acting in an investigatory capacity – an allegation made in the Complaint. Moreover, Judge Cudmore found that a more developed factual record should be developed in order to assess the applicability of qualified immunity.

The state law claims similarly withstood dismissal. Judge Cudmore found that the factual record would need to be developed in order to determine whether there was probable cause to arrest Plaintiff (which would negate a malicious prosecution claim) and whether the Defendant police officers were involved in the criminal proceedings. Furthermore, Plaintiff's intentional infliction of emotional distress ("IIED") claim, which is premised on the malicious prosecution, accrued when the criminal proceedings resolved in Plaintiff's favor (and thus are not time-barred).

Finally, Judge Cudmore found that McLean County cannot be liable under a theory of respondeat superior for the actions of Reynard and Souk because they are state, not county, employees. However, Plaintiff's indemnification claims against McLean County, and the City of Normal, would prevent dismissal of these local governments.

In conclusion, Judge Cudmore recommended that all state and federal claims with respect to the bypass route be dismissed and that the respondeat superior claims against McLean County be dismissed. In all other respects, he recommended that the Motions to Dismiss be denied. None of the parties challenge Judge

Cudmore's conclusion with respect to the bypass route claim and the dismissal of the respondeat superior claims against McLean County. Therefore, those rulings are ACCEPTED.

## STANDARD

A district court reviews *de novo* any portion of a Magistrate Judge's Report and Recommendation to which "specific written objection has been made." FED.R.CIV.PRO. 72(b). "The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id.* However, the Court emphasizes that Rule 72(b) contemplates "<u>specific</u>, written objections to the proposed findings and recommendations [of the magistrate judge]." *Id.* (emphasis added).

## DISCUSSION

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must view a complaint in a light most favorable to the plaintiff. *Williams v. Ramos*, 71 F.3d 1246, 1250 (7th Cir. 1995). The Court must accept all well-pleaded factual allegations and draw all reasonable inferences from those facts in favor of the plaintiff. *Richards v. Kiernan*, 461 F.3d 880, 882 (7th Cir. 2006). A plaintiff is not required to plead extensive facts, legal theories, or to anticipate defenses. *Massey v. Merrill Lynch and Co., Inc.*, 464 F.3d 642, 650 (7th Cir. 2006). However, a plaintiff must "provide the grounds of his entitlement to relief" that are "more than labels and conclusion [] [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955,

1964-1965 (2007) (citations and editing marks omitted). In particular, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965. In clarifying, the Supreme Court has held that "a claim has facial plausibility when the plaintiff pleads factual content that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Both *Twombly* and *Iqbal* are a significant departure from prior case authority that would allow a federal complaint to proceed on the barest of allegations. This Supreme Court precedent "is designed to spare defendant the expense of responding to bulky, burdensome discovery unless the complaint provides enough information to enable an inference that the suit has sufficient merit to warrant putting the defendant to the burden of responding to at least a limited discovery demand." *In re Text Messaging Antitrust Litigation*, 630 F.3d 622, 625-626 (7th Cir. 2010).

Plaintiff has chosen to comply with the pleading requirements of Rule 8(a) by pleading his various claims against the individual Defendants as a group rather than on an individual basis. This type of group pleading is not sanctioned by Rule 8(a) and should be discouraged: these claims should be summarily dismissed. However, considering the scant case law explaining the new pleading requirements ushered in by *Twombly* and its progeny, the Court eschews summary dismissal by attempting to elucidate the application of this latest understanding of Rule 8(a) to this case. With this in mind, the Court emphasizes that claims against *each, individual*, Defendant must be plausible on its face and not merely conceivable. In

assessing such claims, the Court must first determine whether Plaintiff has complied with Federal Rule of Civil Procedure 8(a) by providing a short and plaint statement that he is entitled to relief. *Iqbal*, 129 S.Ct. at 1949. The Court must next determine whether, assuming the veracity of factual allegations, "whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

**SECTION 1983 CLAIMS**

## I. Count I: Due Process

In this Count, Plaintiff generally alleges that "the individual Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial as guaranteed by the Fifth and Fourteenth Amendments . . . ." (Comp. ¶ 60). In light of the dismissal of the bypass route claims, the only supporting facts related to this Count are those related to John Doe. Plaintiff alleges that Defendants "caused material exculpatory evidence to be withheld from Plaintiff and his defense counsel." (Comp. ¶ 61). Plaintiff then outlines the type of material that was allegedly withheld.

It has long been held that:

> [T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady*, 373 U.S. at 87.[3]

---

[3] The Court later expanded the rule and requires the disclosure of "evidence [that] is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request." *United States v. Agurs*, 427 U.S. 97, 110-111 (1976).

This rule of law is tied to concepts of fairness: prosecutors are required to "disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *United States v. Bagley*, 473 U.S. 667, 675-676 (1985); *See also Youngblood v. West Virginia*, 547 U.S. 867, 869-870 (2006). Thus, the government violates a defendant's right to a fair trial by knowingly introducing perjured testimony, failing to turn over requested exculpatory evidence, or failing to "volunteer exculpatory evidence [of sufficient significance] never requested, or requested only in a general way." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995). This obligation extends to the police who should ensure that *Brady* material is conveyed to the prosecutor. *Id.* at 438; *See also U.S. ex rel. Smith v. Fairman*, 769 F.2d 386, 391 (7th Cir. 1985); *Barbee v. Warden, Md. Penitentiary*, 331 F.2d 842, 846 (2nd Cir. 1964) ("If the police allow the State's Attorney to produce evidence pointing to guilt without informing him of other evidence in their possession which contradicts this inference, state officers are practicing deception not only on the State's Attorney but on the court and the defendant."). At this stage of the proceedings, there appears to be no question or argument that the material withheld, the evidence regarding John Doe, was significant enough such that the government was obligated to turn over the material without a specific request. After all, this very material compelled the Illinois Supreme Court to reverse the conviction.[4]

However, for *Brady* purposes, the suppression of evidence occurs when "(1) the prosecution fail[s] to disclose the evidence before it [is] too late for the defendant

_____

[4] The Court expresses no opinion as to whether this evidence is of the type contemplated by *Brady* and its progeny.

to make use of that evidence, and (2) the evidence [is] not otherwise available to the defendant through the exercise of reasonable diligence." *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002); *Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001). That is, no rule of constitutional law holds that exculpatory evidence must immediately be turned over to a suspect in a criminal investigation and certainly no rule of law that requires such evidence to be turned over before an arrest. *Evans v. Circuit Court of Cook County, Ill.*, 569 F.3d 665, 667 (7th Cir. 2009) (stating that the *Brady* doctrine "does not require pretrial turnover."); *United States v. Grintjes*, 237 F.3d 876, 880 (7th Cir. 2001) ("*Brady* applies only where the allegedly exculpatory evidence was not disclosed in time for the defendant to make use of it.").

To the extent, then, that Plaintiff is alleging that any of the individual Defendants withheld *Brady* material during the investigation and prior to his arrest, such a claim must fail as a matter of law. A plaintiff may, however, make out a claim that either the police failed to turn over *Brady* material to the prosecutors and/or that the prosecutors failed to turn over the *Brady* material to a plaintiff after his arrest.

The Court, however, is troubled by the vagueness with which Plaintiff has stated his claims against each individual Defendant. Specifically, the Court finds that Plaintiff has failed to state a claim with respect to States Attorney Reynard and officers Brown and Zayas.

## A. Defendants Reynard, Brown, and Zayas

In outlining the relevant evidence related to John Doe, Plaintiff alleges that Defendant Hospelhorn and Tony Daniels (who is not a Defendant) conducted interviews of Doe. It was during these interviews that Doe appeared nervous and evasive. Plaintiff further alleges that "Defendants" possessed other information about Doe including a polygraph examination conducted by state police, a report of which was addressed to Defendant Warner. Finally, Plaintiff alleges that other documents existed in matters unrelated to the Lockmiller investigation including a police report that Doe was charged with domestic battery and drug charges and a petition for protection that was entered against Doe. Plaintiff goes on to allege that both Freesmeyer and Souk "affirmatively represented" that there was no evidence linking another person to the murder and testified as much before various tribunals.[5]

Fatally absent from the allegations is any indication that either Brown or Zayas participated in any way in either the interviews with Doe or the investigation into his background (which is presumably how the other information was developed). Merely alleging generally that all Defendants did this or that fails to place either of these Defendants on specific notice of what it is they did or did not do.

Section 1983 liability only attaches to Defendants in their individual capacity if they are "personally responsible for the constitutional deprivation." *Doyle v.*

---

[5] The Court would add that Plaintiff is not asserting that he was unaware of the existence of John Doe prior to his trial, but merely that he was not aware of what the investigation had uncovered with respect to John Doe.

*Camelot Care Centers, Inc.*, 305 F.3d 603, 614 (7th Cir. 2002). Plaintiff has not alleged any facts that would lead to the conclusion that these particular Defendants (Reynard, Brown, and Zayas) were plausibly connected with the investigation into Doe and that they had access to the evidence that was allegedly withheld from Plaintiff. With respect to Brown and Reynard, because there is no *respondeat superior* liability in § 1983 claims, they cannot be individually liable unless a Plaintiff shows that he "essentially directed[ed] or consent[ed] to the challenged conduct." *Id.* (citing *Chavez v. Ill. State Police*, 251 F.3d 612, 615 (8th Cir. 2001); *Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010) (noting that supervisory liability attaches when there is a showing that the supervisor "knew" about the constitutional deprivation and "facilitated, approved, condoned, or turned a blind eye to it"). At most, Brown, who is a member of a wholly different police force than the other Defendants, and Reynard are only vaguely alleged to have acted in a supervisory role, participating and ratifying the conduct of the other Defendants. Moreover, Plaintiff only makes general allegations, under the general "Defendants," that Brown and Reynard were involved in the alleged constitutional deprivation (i.e. the withholding of exculpatory evidence). These formulaic recitations of legal elements and conclusory factual statements are insufficient. As observed in *Iqbal*:

> We begin our analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth. Respondent pleads that petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.' . . . . These bare assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a 'formulaic recitation of the elements' of a constitutional

discrimination claim, namely, that petitioners adopted a policy because of, not merely in spite of, its adverse effects upon an identifiable group. As such, the allegations are conclusory and not entitled to be assumed true. . . . It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth. *Id.* 129 S.Ct. at 1951 (citations and quotation marks omitted).

Based on the scant allegations regarding Reynard and Brown in particular, it would not be a reasonable inference that they specifically supervised and directed the police investigation and the development and withholding of information concerning John Doe's alleged culpability in the murder. At this stage of the proceedings, while Plaintiff is not required to point out extensive facts, he must at least point to sufficient specific facts to place these Defendants, and Zayas, on notice of the claims against them, which he has not done. These § 1983 claims in Count I against Brown, Reynard and Zayas then, are DISMISSED WITHOUT PREJUDICE.

## B. Defendants Reynard and Souk

Even if Plaintiff's claims against Reynard and Souk are sufficient, it is clear these two prosecutors are entitled to immunity.

### 1. Absolute Immunity

In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Supreme Court held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Id.* at 430. Thus, a prosecutor is immune from suit even when there is an alleged deliberate suppression of exculpatory evidence during the "judicial phase of a criminal process. *Id.* at 431. This immunity is related not so much to the identity of the actor but

rather the function he performs. *Forrestor v.* White, 484 U.S. 219, 229 (1988); *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993). Moreover, in *Buckley*, the Supreme Court stated that absolute immunity is not necessarily limited to presentations during judicial proceedings; it can also shield activities in preparation for such proceedings:

> We have not retreated, however, from the principle that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made. *Id.* 509 U.S. at 273.

To the extent, then, that Plaintiff is alleging that Reynard and Souk deliberately suppressed exculpatory evidence before the grand jury, at trial, or during the judicial phase and while functioning in a prosecutorial capacity, they are entitled to absolute immunity. *See Burns v. Reed*, 500 U.S. 478, 490-491 (1991).

However, the justifications for absolute immunity extend no further than that function during the judicial phase. *Id.* at 494. Thus, activities that are investigatory or administrative in nature are not entitled to absolute immunity (although they may be entitled to qualified immunity as discussed below). *Id.* at 493-494; *Houston v. Partee*, 978 F.2d 362, 365 (7th Cir. 1992); *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) (noting that prosecutors are not shielded by absolute immunity when "his acts are investigative and unrelated to the preparation and initiation of judicial proceedings").

Plaintiff alleges that, in addition to prosecuting Plaintiff's criminally, Reynard and Souk "participated in, supervised, and directed the Lockmiller murder investigation." (Complaint ¶¶ 10 and 11). Plaintiff goes on to allege that these Defendants were "actively" and "intimately" involved in the investigation, from the beginning. (Comp. ¶ 22). From this point on, the Complaint outlines the investigation that "Defendants" conducted including the investigation into John Does' alleged involvement ("Defendants also developed and concealed important evidence . . ." with respect to John Does' involvement) (Comp. ¶ 41).

The question, then, is whether these allegations are sufficient to assert that Reynard and Souk acted as investigators and are therefore not absolutely immune from the § 1983 claims that they suppressed exculpatory evidence. As indicated, Plaintiff has failed to state a plausible due process claim against Reynard. Also as stated above, Reynard and Souk are absolutely immune with respect to any allegation that they withheld exculpatory evidence during the judicial phase, s*ee Burns*, 500 U.S. at 486, or that suit was initiated based on false testimony or without probable cause. *See Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986).

With respect to the actual alleged constitutional violation, Plaintiff alleges that "Defendants" were aware of John Doe's potential involvement in September, 1993 and that they withheld this information from Plaintiff, who was not arrested and charged until May, 1994. First, the Court finds that these claims against Reynard and Souk suffer from the same vagueness as the claims against Brown.

Namely, Plaintiff merely uses the labels that they directed police conduct, that they engaged in a conspiracy, and that they failed to intervene. They are merely conclusory allegations that do not "nudge[] his claims . . . across the line from conceivable to plausible." *Iqbal*, 129 S.Ct. at 1950-1951 (citations omitted). In any event, it is clear that even if Plaintiff had presented a viable claim that these Defendants acted more like investigators than prosecutors, such a claim still could not proceed for the reasons already stated with respect to Count I. Moreover, they would be entitled to qualified immunity as indicated below.

### 2. Qualified Immunity

Qualified immunity, like absolute immunity, must be determined at the earliest possible time in a lawsuit because it is immunity from suit rather than a defense to liability. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001). In order to determine whether Defendants are entitled to qualified immunity, the Court must first ask: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id*. at 201. At the summary judgment stage, the Seventh Circuit Court of Appeals, in repeating this first question, held that "[f]irst, the plaintiff must present evidence that, taken in the light most favorable to the plaintiff, would allow a reasonable fact finder to determine that he has been deprived of a constitutional right." *Washington v. Haupert*, 481 F.3d 543, 547 (7th Cir. 2007); *See also Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007) ("Although the privilege of qualified immunity is a defense, Plaintiff carries the burden of defeating it."). If Plaintiff has been deprived of a

constitutional right, the Court must then ask whether the right was clearly established "in light of the specific context of the case." Saucier, 533 U.S. at 201. As the Supreme Court explains:

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent. Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal citations and quotation marks omitted).

With these principles in mind, including *Brady* and its progeny, both Reynard and Souk are entitled to qualified immunity on Count I of the Complaint. As noted above, these Defendant's are absolutely immune to the extent that Plaintiff is alleging that they suppressed exculpatory evidence as prosecutors and during the judicial phase of the action against Plaintiff (that is, in the their presentment of the case to the grand jury or to a judicial body). The analysis of qualified immunity, then, only applies to those alleged actions taken by Reynard and Souk in their alleged capacity as investigators of the crime, prior to the actual prosecution of the case. In this respect, Plaintiff's Due Process claim, as outlined in Count I, is that they suppressed material, exculpatory evidence during the investigation of the crime. Certainly, if these Defendants are treated as police officer, they could not logically be liable for withholding information from themselves as prosecutors. Moreover, such a *Brady* violation occurs only when the evidence is suppressed in a manner that would prevent Plaintiff and his counsel from *timely access* such that they are unable to "make use" of the evidence. When

this exact point in time is, is unclear. What is clear, however, is that Plaintiff alleges that the suppression occurred prior to his arrest, his indictment, and prior to his trial. Such a claim does not make out a *Brady* claim and hence, a due process claim. Thus, to the extent that Plaintiff is alleging that these Defendants acted as investigators, there is no plausible argument that their conduct violated a constitutional right as expressed in *Brady* and its progeny. Indeed, the allegations reveal that these Defendant's are entitled to qualified immunity.

## II. Count II: Section 1983 Conspiracy

Count II (Conspiracy to deprive Plaintiff of material exculpatory evidence and information) incorporates the allegations of Count 1 with the addition of the bare assertion of a conspiracy among all individual Defendants.

A § 1983 civil conspiracy claim can be maintained if a Plaintiff can show:

> (1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement. *Scherer v. Balkema*, 840 F.2d 437, 441-442 (7th Cir. 1988).

In the context of this case, it certainly would be legally impossible for police officers to conspire with prosecutors to not turn over *Brady* material to prosecutors. After all, if they conspired together, then the prosecutor would at least know of the *Brady* material. However, it is not legally impossible for the police officers to conspire, amongst themselves, to withhold *Brady* material from prosecutors[6] or that the officers and prosecutors conspired to withhold the *Brady* material from Plaintiff.

---

[6] The Court acknowledges that such a claim would be inconsistent with Plaintiff's claim that prosecutors directed the police investigation and necessarily were aware of the exculpatory evidence.

While, the police officers may not have had an independent, affirmative duty under *Brady* to turn over exculpatory evidence to Plaintiff, a claim that they participated in a conspiracy to deprive Plaintiff of such exculpatory evidence is, generally, viable. It is in this later sense that the Magistrate Judge correctly found that "[a] police officer cannot insulate himself from liability by disclosing evidence to the prosecutors and then taking affirmative steps in conspiracy with the prosecutors to remove any trace of that evidence from police reports." (R&R p. 24).

The only problem is that these allegations suffer from the same vagueness and conclusory nature as much of Plaintiff's Count I. Plaintiff seeks to allege a significant conspiracy among a number of individuals related to specific evidence. He does not, however, allege anything that would make such a claim plausible. He merely asserts that they engaged in a conspiracy to deprive Plaintiff of his rights. There is no assertion of what acts were taken or what agreements were made. In paragraph 41 of the Complaint, Plaintiff states that "Defendants developed and concealed important evidence" regarding John Doe. While such a factual asserting may go to a due process claim, it does nothing to illuminate the conspiracy claim. Plaintiff goes on to allege that:

> 45. Acting individually and in conspiracy with each other and with other unknown co-conspirators, the Defendants caused the information about Does' incomplete polygraph examination, drug and domestic violence charges, petition for order of protection, and steroid use to be concealed from Plaintiff and his defense counsel.

> 46. In fact, Defendants Freesmeyer and Souk affirmatively represented that there was no evidence implicating anyone else in Lockmiller's murder. At the grand jury proceeding, Defendant Freesmeyer falsely testified that he was unable to locate any other

person who had any conceivable motive to commit the murder. At a
pretrial hearing, Souk told Plaintiff, defense counsel, and the court
that he knew 'of no such evidence' with which the defense could argue
that any other party might be found responsible; for the murder. At a
subsequent pretrial discussion, Souk argued that Doe was; six months
removed; from the case and against represented that there was no
evidence suggesting that Doe was a viable alternative suspect.

Presumably paragraph 46 is meant to allege the "overt acts" that were taken by

Defendants in furtherance of the conspiracy. However, at most, paragraph 46

relates to Freesmeyer and Souk and does nothing to illuminate the agreement

between any of the other Defendants or whether these actions were taken in

furtherance of a conspiracy.

Without consideration of its legal ramifications, these conclusory allegations,

as taught by *Twombly* and *Iqbal*, amount to nothing more than a "formulaic

recitation of the elements" of constitutional due process claim based on a conspiracy

and is insufficient to plead a plausible claim under current pleading standards.

*Twombly* itself involved a conspiracy claim, albeit one tied to the Sherman

Act and not § 1983.[7] The Court held that while the pleading of extensive facts was

not required:

stating such a claim requires a complaint with enough factual matter
(taken as true) to suggest that an agreement was made. Asking for
plausible grounds to infer an agreement does not impose a probability
requirement at the pleading stage; it simply calls for enough fact to
raise a reasonable expectation that discovery will reveal evidence of
illegal agreement. *Id.* 550 U.S. at 556.

---

[7] In *Iqbal*, the Supreme Court explained that *Twombly* interpreted and applied Rule
8, which in turn governs the pleading standard "in all civil actions." *Iqbal*, 129
S.Ct. 1941.

The *Twombly* opinion went on to educate that "the need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects Rule 8(a)(2)'s threshold requirement that the "plain statement" possess enough heft to "show that the pleader is entitled to relief." *Id.* at 557.

In Count II, the bare allegation of conspiracy is patently insufficient to meet this pleading requirement and Count II is dismissed, without prejudice, on that basis. Plaintiff has not only failed to allege facts that would make an agreement between the parties plausible; there is also no assertion that any claimed fact was an overt action in furtherance of the conspiracy. Merely using the phrase "conspiracy" does nothing to place the individual Defendants on notice of such a claim.[8]

### III. Count III: Failure to Intervene

Count III suffers from the same fatal defect as Counts I and II: there simply is no factual allegation tying this claim to any particular Defendant. In order to prevail on this claim, Plaintiff must eventually show that a defendant has reason to know that a constitutional violation is occurring and that he has a reasonable opportunity to intervene. *See e.g. Chavez v. Illinois State Police*, 251 F.3d 612, 652 (7th Cir. 2001). Plaintiff only alleges generally that Defendants "stood by without intervening to prevent the misconduct." This is just a conclusory statement that is not entitled to weight.

---

[8] Indeed, the factual assertion that these or any Defendant "scrubbed" the police reports, which is alluded to by the parties, is nowhere found in the Complaint.

Analysis of the state law claims should proceed as with the federal claims, from the perspective of each, individual Defendant as prosecutor or police officer.

## I. Immunity

Defendants Reynard and Souk argue that they are also absolutely immune from state law claims of malicious prosecution, civil conspiracy, and intentional infliction of emotional distress. In *White v. City of Chicago*, 861 N.E.2d 1083 (Ill. App. Ct. 2006), the Illinois Court of Appeals applied, exclusively, federal law (*Imbler*, *Buckley*, *Burns*, and 7th Circuit case authority) to state law claims of wrongful imprisonment, intentional infliction of emotional distress, and civil conspiracy against state prosecutors. The Court found that, pursuant to authority found in federal law, the prosecutors are absolutely immune. In *Fonseca v. Nelson*, 2009 WL 78144 (S.D. Ill. 2009), cited by Defendants, the district court, relying on *White*, found that the state courts applied the same principles as federal courts to the question of prosecutorial immunity. *Id.* at * 7.

However, in *Aboufariss v. City of DeKalb*, 713 N.E.2d 804 (Ill. App. Ct. 1999), the Illinois Court of Appeals analysis of a prosecutor's immunity was not based on federal law but rather on the state doctrine of "public official immunity." This immunity, while similar to absolute immunity in the federal sphere, has a caveat that actions taken by public officials with a "malicious motive" are not subject to immunity. *Id.* at 812. This caveat was not mentioned by the *Fonesca* court but has been criticized in *Gordon v. Devine*, 2008 WL 4594354, *16-17 (N.D. Ill. 2008)

(which noted that the *Aboufariss* opinion is internally inconsistent, requiring a lack of malice while at the same time stating that a prosecutor enjoys the same type of immunity as the judiciary). The *Aboufariss* decision has nonetheless been followed in *Horstman v. County of DuPage*, 284 F.Supp.2d 1125, 1133 (N.D. Ill. 2003).

While these Defendants mention both *White and Aboufariss*, they offer no argument as to whether the "malicious motive" caveat would preclude immunity with respect to the malicious prosecution claim. Defendants offer no argument that would resolve this apparent discrepancy within the Illinois state courts and the district courts that have interpreted those decisions. For this reason, these Defendants have not carried their burden of showing that they are entitled to immunity on the state law claims.

## II. Statute of Limitations on the IIED Claim

Defendants next argue that Plaintiff's IIED claim is time barred. Defendants assert that the claim accrued when Plaintiff was sentenced in 1995, that this claim carries a 1 year limitations period, and that Plaintiff did not file suit until 2010. Plaintiff argues, however, that the limitations period did not begin to run until January, 2009 when all charges against Plaintiff were dropped.

Illinois' Local Government and Governmental Tort Immunity Act provides that no civil action "against a local entity or any of its employees" may be brought "unless it is commenced within one year from the date that the injury was received or the cause of action accrued." An IIED claim is subject to the "continuing tort" rule: "the limitations period does not begin to run until the date of the last injury or

the date the tortuous acts cease." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003) (quotation marks and citations omitted). However, "where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." *Id.* Defendants argue that the "one overt act" that gave rise to this IIED claim is Plaintiff's sentencing in 1995. *See e.g. Bank of Ravenswood v. City of Chicago*, 717 N.E.2d 478 (Ill. App. Ct. 1999) (a trespass case wherein the court held that the cause of action accrued when an underground subway was completed, even though there was a "continual effect from the initial violation").

The IIED claim is based on the malicious prosecution claim. Therefore, Plaintiff's claim could not have accrued at sentencing because the malicious prosecution claim did not accrue until the charges against Plaintiff were dropped. *See Carroccia v. Anderson*, 249 F.Supp.2d 1016, 1028 (N.D. Ill. 2003); *Walden v. City of Chicago*, 2010 WL 5168789, *15 (N.D. Ill. 2010). Defendants' reliance on *Evans v. City of Chicago*, 434 F.3d 916 (7th Cir. 2006), is misplaced. In considering an IIED claim, the Seventh Circuit rejected an argument that "the cause of action did not accrue until the termination of the state criminal proceedings" and rather found that the limitations period accrues "when the plaintiff suffers injury." *Id.* at 934. The court, however, did not consider the IIED claim in the context of a malicious prosecution claim – indeed contrary to Defendants' synopsis of the case in

their brief, the Court in *Evans* did not tie the IIED claim to the malicious prosecution claim.

The Court also finds convincing Plaintiff's argument that *Parish v. City of Elkhart*, 614 F.3d 67 (7th Cir. 2010), applies to this case, even though the case involved the application of Indiana law.  In *Parish,* the plaintiff was released and charges were dropped after he spent 8 years in prison for attempted murder.  He sued both the City of Elkhart and a number of police officers under § 1983 and for state claims of false arrest, false imprisonment, malicious prosecution, and IIED. In the appeal, the Seventh Circuit considered whether the district court correctly concluded that the IIED claim accrued when the plaintiff was arrested rather than when he was exonerated.  The Court first noted that "under the *Heck [v. Humphrey*, 512 U.S. 477 (1994)] framework, a claim that directly attacks the validity of a conviction [like a malicious prosecution claim] cannot accrue until after the conviction has been terminated in a manner favorable to the plaintiff."  *Id.* at 681. The Court juxtaposed this conclusion with the finding that a claim of false arrest or false imprisonment accrues prior to conviction.  *Id.* at 681 (citing *Wallace v. Kato*, 549 U.S. 384 (2007).  The Court next found that plaintiff's IIED claim was based on, in part, the police officers covering up of exculpatory evidence "through all stages of the investigation and trial" and that "the conviction was an essential piece of this tort because it was the wrongful conviction that led to the emotional strain and mental anguish" faced by the plaintiff.  *Id.* at 683.  The Court concluded, then, that the IIED claim did not accrue prior to conviction and that his claims would have

challenged his underlying conviction. Thus, the IIED claim could not have been brought "until his conviction was disposed on in a manner favorable to him." *Id.* at 684.

In this case, Plaintiff alleges that throughout the investigation and the trial, Defendants suppressed and/or conspired to suppress exculpatory evidence that resulted in severe emotional distress. This claim is inextricably intertwined with Plaintiff's malicious prosecution claim and could not have been brought until his conviction became invalid. The claim is therefore not time-barred.

## III. Malicious Prosecution Claim

Defendants Reynard and Souk argue that Plaintiff has failed to state a malicious prosecution claim because he has not alleged that the state proceedings were terminated in a favorable manner. In order to make out a malicious prosecution claim, Plaintiff must show that:

(1) the defendant brought a criminal proceeding against the plaintiff;
(2) the proceeding terminated in a manner indicative of innocence;
(3) the defendant lacked probable cause to bring the proceeding;
(4) the defendant acted out of malice; and
(5) injury.

*Porter v. City of Chicago*, 912 N.E.2d 1262, 1265 (Ill. App. Ct. 2009).

Defendants argue that Plaintiff has not alleged that the proceedings were terminated in his favor, that there is no assertion that it was terminated in a manner indicative of Plaintiff's innocence.

In the Complaint, Plaintiff states that the Illinois Supreme Court reversed his conviction and remanded the matter for a new trial. (Comp. ¶ 53). Plaintiff

then goes on to allege that "[o]n January 29, 2009, the State chose not to initiate a new trial and dismissed all charges against Plaintiff." (Comp. ¶ 55). Neither of these statements specifically alleges that the proceedings were terminated in a manner indicative of Plaintiff's innocence. In-and-of-themselves, they are neutral statements of events. However, it is reasonable to infer, in light of the other allegation in the Complaint, namely that there was a more viable suspect and that it was not possible for Plaintiff to have committed the crime, that the prosecutor elected not to proceed against Plaintiff because he is innocent of the charges. Plaintiff has sufficiently stated a claim for malicious prosecution.

Defendant police officers argue that probable cause existed to prosecute Plaintiff precluding the claim for malicious prosecution. It is argued that the Complaint itself establishes that there was probable cause to arrest Plaintiff and that the existence of John Doe evidence does not negate a probable cause finding. Thus, they argue that Plaintiff has failed to state a malicious prosecution claim. A determination that police had probable cause to make an arrest will defeat a malicious prosecution claim. *See Porter*, 912 N.E.2d at 1264-1265. The Complaint alleges that the only evidence against Plaintiff was his opportunity to commit the crime and the lack of a viable alternative suspect. The determination of whether this evidence constitutes sufficient probable cause to arrest Plaintiff is necessarily a factual inquiry that cannot be resolved on a motion to dismiss.

## IV.  Civil Conspiracy based on state law

For the reasons set forth above, the Court also finds that Plaintiff has failed to state a civil conspiracy claim against Defendants.

## V.  Liability for each individual Defendant

With respect to the federal claims, the Court has indicated that Plaintiff has generally failed to sufficiently allege facts that would render each individual Defendant liable for the alleged conduct.  Without such necessary individualized attention, Defendants cannot be placed on notice of the claims against them.  This same flaw mars Plaintiff's state law claims.  While the Court will not be dismissing these claims at this juncture, the Court would instruct Plaintiff to give serious consideration to parsing out which claims will be asserted against each individual Defendant and the reasons therefore.

## CONCLUSION

For the foregoing reasons, the Report and Recommendation (Doc. 35) is ACCEPTED IN PART AND REJECTED IN PART and the Motions to Dismiss (Docs. 19 and 25) are GRANTED IN PART AND DENIED IN PART.

1.  All claims related to the bypass route are DISMISSED for failure to state a claim.

2.  The respondants' superior claims against McLean County are DISMISSED.

3.  The claims in Count I against Brown, Reynard, and Zayas are DISMISSED WITHOUT PREJUDICE.

4.  Reynard and Souk are entitled to absolute immunity and qualified immunity as to Count I of the Complaint and it is accordingly DISMISSED as to these two Defendants.

5.   Counts II, III, and V are DISMISSED WITHOUT PREJUDICE. Plaintiff is granted leave to file an amended complaint consistent with this Order within 15 days of the date of this Order.  Prior to filing such an Amended Complaint, the Court encourages Plaintiff to take a closer look at *Twombly* and *Iqbal* and to tailor their pleading according to the rulings in those cases.

6.   In all other respects the Motions to Dismiss are DENIED and the Objections are overruled.

This matter is referred to the Magistrate Judge for further proceedings.


Entered this <u>2nd</u> day of March, 2011


                              _____
                                     s/ Joe B. McDade
                              JOE BILLY MCDADE
                              United States Senior District Judge