**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION**

| | | |
|---|---|---|
| Alan Beaman, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  10-CV-1019 |
| | ) | |
| James Souk, Charles Reynard, | ) | |
| John Brown, Tim Freesmeyer, | ) | |
| Rob Hospelhorn, Dave Warner, | ) | |
| Frank Zayas, McClean County, Illinois, | ) | |
| Town of Normal, Illinois, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

In May 2008, the Illinois Supreme Court reversed Plaintiff's

13-year-old murder conviction due to the State's failure to disclose

material information about a viable alternative suspect.  <u>People v. Beaman,</u>

229 Ill.2d 56 (2008).  The charges were subsequently dropped and Plaintiff

followed with this lawsuit.

On March 3, 2011, Judge McDade accepted in part and rejected in

part this Court's recommendation on motions to dismiss.  Judge McDade

dismissed several claims without prejudice and concluded that Defendants

Reynard (former McClean County State's Attorney) and Souk (former

Assistant State's Attorney) were entitled to absolute or qualified immunity on Count I, the federal due process claim. Judge McDade granted Plaintiff leave to file an amended complaint. Defendants Souk, Reynard and McLean County followed with a motion to dismiss the amended complaint, the motion presently before this Court. For the reasons below, the Court recommends that the motion be denied.

## Background and Additional Allegations

Plaintiff alleged in his original complaint that the defendants intentionally concealed exculpatory evidence, namely, evidence regarding a "bypass route" relevant to Plaintiff's alibi, and, evidence regarding a viable alternative suspect. Those allegations are set forth in detail in Judge McDade's prior order (d/e 35) and in this Court's prior recommendation (d/e 35), and will not be repeated here except as necessary. The original complaint pursued eight counts: the first three were 42 U.S.C. § 1983 federal claims for due process, conspiracy, and failure to intervene (Counts I-III); the next three claims were state claims for malicious prosecution, conspiracy, and intentional infliction of emotional distress (Counts IV-VI); and, the last two claims were state claims for respondeat superior liability and indemnification (Counts VII-VIII).

On March 3, 2011, Judge McDade dismissed Count I (§ 1983 due process) without prejudice as to Defendants Brown, Reynard and Zayas. (d/e 48, p. 15). Judge McDade concluded that the allegations were too vague and conclusory to give notice of a plausible due process claim against these three defendants. (d/e 48, p. 15). He also concluded that, in any event, Defendants Reynard and Souk were entitled to absolute immunity and qualified immunity on Count I. (d/e 48, p. 19). Accordingly, Count I was dismissed without prejudice as to Brown, Reynard and Zayas, and also dismissed as to Reynard and Souk based on absolute and qualified immunity.

Judge McDade further concluded that Counts II (§ 1983 conspiracy), III (§ 1983 failure to intervene), and V (state law civil conspiracy) were too vague and conclusory to meet notice pleading requirements. (d/e 48, p. 23). These counts were dismissed without prejudice, with leave to replead within 15 days. (d/e 48, p. 31). Plaintiff's claims related to the "bypass route" and the respondeat superior claims against McClean County were also dismissed, since Plaintiff had not objected to this Court's recommendation of dismissal of those claims. (d/e 48, pp. 7-8, 30)

Additionally, Judge McDade declined to find that absolute immunity protected the defendants on the state law claims, because the defendants had not addressed a possible conflict in case law regarding whether a prosecutor's "'malicious motive'" precludes absolute immunity. (d/e 48, pp. 24-25). Judge McDade also found that the state law IIED[1] claim was not time-barred, and that the issue of probable cause on the state malicious prosecution claim could not be determined on a motion to dismiss. (d/e 48, pp. 28-29). Judge McDade noted, however, that the state claims, like the federal claims, failed to give notice of how each defendant contributed to the alleged violation, and admonished Plaintiff to "give serious consideration to parsing out which claims will be asserted against each individual defendant and the reasons therefore." (d/e 48).

In accordance with Judge McDade's order, Plaintiff filed an amended complaint (d/e 50), later replaced by another amended complaint (d/e 63), corrected to reflect Defendant Brown's title as a McLean County Deputy Sheriff, rather than as a lieutenant for the Town of Normal Police Department. (d/e 61, ¶ ¶ 2-3).

---

[1]Intentional Infliction of Emotional Distress

The amended complaint repeats the allegations in the original complaint, even those regarding the dismissed claims, for the professed purpose of preserving the issues for appeal. (d/e 63, footnotes 1, 4-6). It also adds some more detail regarding the involvement of Defendants Reynard and Souk. In particular, Plaintiff adds these allegations:

> In addition, Reynard and Souk both approved a series of "consensual overhear" requests, taped conversations that were later used as evidence against Plaintiff at trial. Souk and Reynard also participated in the daily "investigators' meetings" held at the Normal Police Department, during which the State's Attorneys and detectives planned strategy, discussed the available evidence, and developed potential suspects. It was during one or more of these meetings that the investigative team, which included defendants Zayas, Hospelhorn, Brown, Warner, Freesmeyer, Souk, and Reynard, made the decision not to disclose evidence to the defense concerning the existence of John Doe as an alternative suspect. During another such meeting, in May 1994, the team decided to arrest Plaintiff for the murder of Lockmiller.

(d/e 63, ¶ 22). A potential suspect, Michael Swaine, who had been living with the victim at the time of her murder, was allegedly drafted to participate in consensual overhears (eavesdropping) with Plaintiff, in order to inculpate Plaintiff. (d/e 63, ¶ 28(a)).[2] Plaintiff further alleges that, "on

---

[2]Some additional allegations were added regarding the bypass route, but they are not relevant here. (d/e 63, para. 37). Additional allegations were also made regarding the officers' conduct, (d/e 63, paras. 41, 57), but the officers have not moved to dismiss the amended complaint, so those new allegations are not set forth here.

May 16, 1994, Defendants Reynard, Souk, Zayas, Brown, and

Freesmeyer, and potentially unknown others, met to review the facts of the

case. According to Freesmeyer's police reports, during this meeting the

Defendants decided to 'effect the arrest of [Plaintiff] for the homicide of

Jennifer Lockmiller.'" (d/e 63, ¶ 49). Plaintiff was arrested the next day.

The amended complaint also adds a new section relating to the

conspiracy and failure to intervene claims. (d/e 63, ¶¶ 54-59). Plaintiff

alleges:

> Defendants Freesmeyer, Hospelhorn, Warner, Brown, Zayas,
> Souk, and Reynard entered into a voluntary agreement that
> they would not disclose to Plaintiff any information concerning
> John Doe, and thereby insured that Plaintiff was wrongfully
> prosecuted for Lockmiller's murder. The individual Defendants
> held daily meetings during the course of the investigation in
> which they discussed, among other things, the viability of
> potential suspects. During one or more such meetings, the
> individual Defendants made an agreement or series of
> agreements that they would not disclose the existence of an
> alternative suspect, John Doe, to Plaintiff or his criminal
> defense counsel.

(d/e 63, ¶ 55). Pursuant to this alleged agreement, the officers

"purposefully omitted any significant mention of Doe from police reports

and any other records turned over to the defense." (d/e 63, ¶ 56).

Defendants Souk and Reynard allegedly learned about the evidence

against Doe and agreed with the officers that it should be concealed. Souk

and Reynard allegedly approved the overhear requests in an attempt to develop evidence against Plaintiff.  Souk also allegedly signed the warrant for Plaintiff's arrest and falsely stated in a pre-trial conference that there were no suspects besides Plaintiff.  (d/e 63, ¶ 58(a)-(c)).  Souk was allegedly in "'daily contact'" with the lead investigator (Defendant Freesmeyer) and reviewed all the police reports.  Freesmeyer allegedly "looked to Souk for direction in handling the investigation."  (d/e 63, ¶ 58(d)).

## Analysis

### I.  Claims Already Dismissed

Before reaching the merits of the motion to dismiss, the Court believes that the record should be cleared up to reflect which counts are remaining.

Plaintiff does not need to replead the dismissed claims in order to preserve them for appeal, but that is what he has done in his amended complaint, which confuses the record.  *See* Serritella v. Markum, 119 F.3d 506, 512, n. 6 (7th Cir. 1997).  In order clear up that confusion, the Court will recommend that the claims which have already been dismissed without leave to replead be dismissed again.  These are the claims relating to the

failure to disclose evidence about the bypass route; the respondeat superior claim against McClean County; and the dismissal of Count I as to Defendants Souk and Reynard on grounds of absolute and qualified immunity.

The Court will also recommend dismissal of Counts II (§ 1983 conspiracy) and III (§ 1983 failure to intervene) against Souk and Reynard. Judge McDade dismissed these claims without prejudice as to all the individual defendants, but Plaintiff interpreted Judge McDade's ruling on absolute and qualified immunity to apply to all the federal claims against Souk and Reynard. (d/e 63, footnotes 4-6).[3]  Plaintiff does not argue that his additional allegations preclude immunity for Reynard and Souk on Counts II and III.  And, Plaintiff asserts that the only reason he has kept Reynard and Souk in on the federal counts is to preserve the issue for appeal.  Accordingly, the Court recommends that Reynard and Souk be dismissed on Counts II and III.

---

[3]Footnotes 4-6 of the amended complaint state, "The District Court dismissed Plaintiff's federal claims against Defendants Souk and Reynard on the grounds of absolute immunity or, alternatively, qualified immunity.  Plaintiff repleads the allegations against these Defendants for the purposes of preserving the issue for review on appeal."

The Court will not recommend dismissal of Count I against Defendants Brown and Zayas, because they have not moved to dismiss the amended complaint, which contains some new allegations. Judge McDade dismissed Brown and Zayas from Count I without prejudice, on the grounds that the allegations were too vague and conclusory. Judge McDade noted that "[f]atally absent from the allegations is any indication that either Brown or Zayas participated in any way in either the interviews with Doe or the investigation into his background." (d/e 48, p. 13). The amended complaint attempts to address this by adding allegations that Zayas and Brown (among others) "conducted superficial investigations" of other suspects (d/e 63, ¶28), interviewed John Doe or collected information about Doe (d/e 63, ¶ ¶ 41, 57(b)), intentionally omitted information from police reports (d/e 63, ¶ 56), and participated in the meeting in which the decision to arrest Plaintiff was made (d/e 63, ¶ 49). The Court need not decide if these new allegations are sufficient to state a claim against Brown or Zayas in Count I, because neither has moved to dismiss the amended complaint. Instead, both Brown and Zayas have filed Answers stating that they were involved in the investigation in some fashion. (d/e 58, p. 4; d/e 64, p. 5).

Similarly, Counts II and III should remain in against the defendants other than Souk and Reynard. These counts were dismissed without prejudice, but Plaintiff has added new allegations relevant to these counts. The Court need not decide if these new allegations are sufficient to meet the notice pleading standard, because none of the defendants, besides Souk and Renard who are dismissed from Counts I-III on immunity grounds, have moved to dismiss the amended complaint.

## II. Motion to Dismiss before the Court

### A. Legal Standard for State Law Prosecutorial Immunity

Relevant to Souk and Reynard, Plaintiff pursues state law claims for malicious prosecution, conspiracy, and intentional infliction of emotional distress. Souk and Reynard move to dismiss only the state law claims, without addressing the federal claims, since Plaintiff has repeated his federal claims against them only for purposes of appeal.

Souk and Reynard press that state law absolute prosecutorial immunity shelters them from the state claims. They made this argument as to the original complaint, but Judge McDade concluded that they had not carried their burden because they had failed to resolve possibly

conflicting approaches by state appellate and federal district courts.

(d/e 48, p. 25).

The controversy centers on whether there is a "malicious motive" exception to the state law immunity afforded a prosecutor. After a review of the cases cited by the parties, and as explained in further detail below, this Court concludes that there is no such exception, and that state law on absolute prosecutorial immunity follows federal law.

Plaintiff cites <u>Aboufariss v. City of DeKalb</u>, 305 Ill.App.3d 1054 (2d Dist. 1999) in support of the malice exception. <u>Aboufariss</u> involved allegations that a police officer and an assistant state's attorney knew that the plaintiff had committed no crime, yet included intentionally false statements in an arrest motion in order to mislead the court that probable cause existed. 305 Ill.App.3d at 1057. The Illinois appellate court affirmed the circuit court's grant of summary judgment to the defendants, analyzing the state law immunity issue as "public official immunity," a state common law immunity which protects all public state officials for actions that fall within the scope of their official authority, provided their actions are not "the result of 'malicious motives.'" <u>Aboufariss</u>, 305 Ill.App.3d at 1065. The appellate court found that immunity applied, reasoning that "there is no

evidence in the record to support plaintiff's argument that [the assistant state's attorney]  knowingly or recklessly withheld evidence from the trial court."  305 Ill.App.3d at 1065.  This reasoning suggests that the motives and reasonableness of the state's attorney's behavior is a relevant factor in the state law prosecutorial immunity analysis.  Under federal law, a prosecutor's good faith is not relevant.  Under federal law, if the actions at issue were "intimately associated with the judicial phase of the criminal process," absolute prosecutorial immunity applies, regardless of the prosecutor's intentions.  Imbler v. Pachtman, 424 U.S. 409, 430 (1976).

The Court in Aboufariss, however, also impliedly relied on federal principles of absolute prosecutorial immunity.  The Court noted that:

> Because we have already concluded that [the assistant state's attorney's] actions fell within the scope of traditional prosecutorial functions and plaintiff's state law claims against [the assistant state's attorney] were based on the same factual allegations contained in the section 1983 claims, public official immunity operates to bar the state law claims against [the assistant state's attorney].

305 Ill.App.3d at 1065.  The Aboufariss Court also stated that "[a] prosecutor acting within the scope of her prosecutorial duties enjoys immunity from civil liability, the same immunity afforded to the judiciary."

Id.  The Court ultimately concluded that the assistant's state's attorney

was immune.  These statements suggest that the <u>Aboufariss</u> Court adopted the federal standard when assessing the state law immunity claim.

After reviewing the cases, this Court concludes that the public official immunity doctrine is separate from the doctrine of absolute prosecutorial immunity, the latter being more extensive than the former.  The public official immunity doctrine applies to State officials and employees, not just to state's attorneys.  It "'rests on the theory that government officials should not be impeded from acting in ways they perceive are in the public's best interest because of fears of personal liability.'" <u>Janes v. Albergo</u>, 254 Ill.App.3d 951 (1st Dist. 1993)(quoted cite omitted).  "'To be protected, the actions taken must be within the scope of the official's authority and not as a result of malicious motives.'" <u>Id.</u> (quoted cite omitted).

The cases cited by Plaintiff discussing immunity for public officials involve defendants who were not state's attorneys, except for <u>Aboufariss</u> and <u>Horstman</u> (*infra*).  *See, e.g.,* <u>McCormick v. Burt</u>, 95 Ill. 263 (1880)(school directors); <u>Kelly v. Ogilvie</u>, 64 Ill.App.2d 144 (1st Dist. 1965)(sheriff, warden); <u>Fustin v. Bd. of Ed. Community Unit Dist. No. 2</u>, 101 Ill.App.2d 113 (5th Dist. 1968)(school board); <u>Lusietto v. Kingan</u>, 107 Ill.App.2d 239 (3rd Dist. 1969)(highway maintenance supervisor);

Thiele v. Kennedy, 18 Ill.App.3d 46 (3rd Dist. 1974)(sheriff); People ex rel. Scott v. Briceland, 65 Ill.2d 485 (1976)(EPA director and deputy director); Barth v. Board of Ed. of City of Chicago, 141 Ill.App.3d 266 (1st Dist. 1986) (school board)(overruled on other grounds); In re Chicago Flood Litigation, 176 Ill.2d 179 (1997)(City of Chicago).

In contrast, most of the cases cited by the parties dealing with state's attorneys speak first (and last) of absolute prosecutorial immunity, not of public official immunity. *See* Gordon v. Devine, 2008 WL 4594354 * 16 (N.D. Ill., Judge Aspen)(not reported in F.Supp.2d). This is likely because the absolute prosecutorial immunity afforded state prosecutors is more expansive, not dependent on the prosecutor's motive or good faith but instead on the function performed. If absolute prosecutorial immunity applies, it is not necessary to discuss public official immunity or any other kind of qualified immunity.

For example, in White v. City of Chicago, 369 Ill.App.3d 765 (1st Dist. 2006), the Appellate Court applied federal precedent to determine that prosecutors were absolutely immune from state law claims because their actions were all associated with the "'judicial phase of the criminal process.'" 369 Ill.App.3d at 769, *quoting* Imbler v. Pachtman,

424 U.S. 409, 430 (1976).[4]  Most of the federal district court cases cited by

the parties, and found by this Court, have used the same approach.  *See*

Kitchen v. Burge, — F.Supp.2d —, 2011 WL 1485301 *12 (N.D. Ill. 2011,

Judge Bucklo)(no malice requirement for state prosecutorial immunity);

Van Guilder v. Glasgow, 588 F.Supp.2d 876, 880 (N.D. Ill. 2008, Judge

Castillo)("Illinois courts apply this same functional analysis to state law

claims against prosecutors.")(*citing* White and Aboufariss);  Patterson v.

Burge, 2010 WL 3894433 * 7 (N.D. Ill. 2010, Judge Gottschall)(*citing*

White); Fonseca v. Nelson, 2009 WL 78144 *7 (S.D. Ill. 2009, Judge

Reagan)("Illinois courts apply the same principles in determining whether

absolute immunity protects a prosecutor from liability for state law

claims.")(*citing* White); Hughes v. Krause, 2008 WL 2788722 *2 (N.D. Ill.

2008, Judge Andersen)("Although under Illinois law there is a doctrine of

public official immunity which has a lack of malice requirement, such is not

the immunity afforded prosecutors. Prosecutors, like judges, must be

allowed to perform the functions of their jobs fearlessly and without fear of

consequence."); Gordon v. Devine, 2008 WL 4594354 * 16-17 (N.D. Ill.

---

[4]White also concluded that it lacked subject matter jurisdiction over the claims, which "should have been brought in the Court of Claims, . . . ." 369 Ill.App.3d at 779. The issue of state sovereign immunity has not been raised and therefore is not addressed.

2008, Judge Aspen)(adopting case trend of extending state prosecutorial immunity ("quasi-judicial immunity") even where malice alleged).

The federal district cases above which have discussed Aboufariss have either concluded that it did not graft a "malicious motive" requirement on to the state prosecutorial immunity analysis, or have determined that its statements are internally inconsistent. *See, e.g.,* Van Guilder, 588 F.Supp.2d at 880 (N.D. Ill. 2008)(*citing* Aboufariss for conclusion that federal precedent applied, but without discussion); Hughes, 2008 WL 2788722 at *1-2 (concluding, on reconsideration, that Aboufariss extended same immunity to prosecutors as judiciary, with no malice requirement); Gordon, 2008 WL 4594354 at *16 (N.D. Ill. 2008)(statements in Aboufariss internally inconsistent).

Plaintiff cites Horstman v. County of DuPage, 284 F.Supp.2d 1125, 1133 (N.D. Ill. 2003), which did discuss public official immunity in the context of state law claims against state's attorneys. However, the court in that case did not determine that public official immunity was the only immunity available. The court was only addressing the prosecutor's argument to dismiss the claim on that ground. The Horstman Court concluded that dismissal on that ground would be premature, just as it had

concluded that dismissal of the federal claims on federal immunity grounds was premature. Id. at 1132-33. Horstman does not hold that the only immunity afforded a state prosecutor for state claims is public official immunity.

Plaintiff also cites Slomer v. People, 25 Ill. 70, 1860 WL 6501 (1860), an Illinois Supreme Court case from 1860 which states that, though a prosecutor is immune from civil prosecution if the prosecutor reasonably believes a person has committed a crime, the prosecutor "is liable to respond in damages" if the prosecution is "prompted by malice," and "there is no probable cause to believe that he is guilty." Id., 1860 WL at *2. Slomer, however, was a criminal case. Slomer was indicted for and convicted of the crime of false imprisonment. He had obtained an arrest warrant on false pretenses, and then conspired to hold the arrestee until the arrestee signed an affidavit to assist Slomer with Slomer's own trial troubles. After the arrestee signed the affidavit and paid a bribe, he was allowed to escape. Slomer and his cohort were subsequently indicted and found guilty of false imprisonment. On appeal, the issue was whether the arrest warrant, which appeared proper on its face, protected Slomer from conviction. The Court answered no.

Slomer is inapplicable here, because it did not involve a civil action for damages by the arrestee. In any event, this Court doubts that Slomer would have been protected by absolute prosecutorial immunity: jailing someone to extort an affidavit and bribe are not activities intimately associated with the judicial process.

In sum, Plaintiff cites no case, nor did this Court find one, in which a state prosecutor was held liable in a civil suit based on actions which were "intimately associated with the judicial process." The Court concludes, based on the cases above, that there is no practical conflict in the analytical approach of the cases, though the words used to justify the result may differ in Aboufariss. This makes sense. If plaintiffs were able to skirt state prosecutorial immunity by simply alleging malice, that immunity would be substantially diluted, endangering a prosecutors' ability to perform prosecutorial duties without intimidation.

Accordingly, the Court concludes that the same absolute prosecutorial immunity applies to the state law claims as to the federal law claims. Thus, as Judge McDade ruled, "Reynard and Souk are absolutely immune with respect to any allegation that they withheld exculpatory evidence during the judicial phase, . . . , or that suit was initiated based on

false testimony or without probable cause." (d/e 48, p. 17). Their actions in initiating the charges against Plaintiff and in pursuing them in court are absolutely immune from this lawsuit, whether the claim is based on federal or state law.

### B. Application of Legal Standard of State Law Immunity to Facts Alleged

Souk and Reynard ask the Court to find that they "are entitled to absolute immunity for Plaintiff's state law claims for the same reasons they are so entitled on the federal claims." (d/e 55, p. 11). However, they do not address the new allegations in the amended complaint–that they participated in regular investigative meetings and decided with others in those meetings not to disclose the information about John Doe, before Plaintiff was ever arrested and allegedly before there was sufficient probable cause to arrest him. Plaintiff argues that:

> Plaintiff's claims of malicious prosecution, IIED, and state law civil conspiracy are based on the State's Attorney Defendants *investigative* misconduct–misconduct that was committed in the months leading up to Plaintiff's arrest, prior to the instigation of formal criminal proceedings, and before the Defendants stepped into their role as prosecutors. Plaintiff alleged that the State's Attorney Defendants were "active and positive" participants in the Lockmiller investigation; that they colluded with the officer defendants in directing a murder investigation that focused upon Plaintiff as the prime suspect, despite the lack of evidence connecting him to the crime, and they

> maliciously and purposely concealed information of an
> alternative viable suspect during that investigation . . . .

(d/e 62, p. 13)(emphasis in original).  Plaintiff also cites <u>Buckley v.</u>

<u>Fitzsimmons</u>, 509 U.S. 259 (1993).  In <u>Buckley</u>, the Supreme Court held

that prosecutors were not absolutely immune from a claim arising from their

alleged participation in the fabrication of evidence linking a boot print to the

plaintiff, where those actions occurred before probable cause existed to

arrest the plaintiff or any proceedings had been initiated against him:

> There is a difference between the advocate's role in evaluating
> evidence and interviewing witnesses as he prepares for trial, on
> the one hand, and the detective's role in searching for the clues
> and corroboration that might give him probable cause to
> recommend that a suspect be arrested, on the other hand.
> When a prosecutor performs the investigative functions
> normally performed by a detective or police officer, it is "neither
> appropriate nor justifiable that, for the same act, immunity
> should protect the one and not the other."

<u>Buckley</u>, 509 U.S. at 273-74, *quoting* <u>Hampton v.</u> Chicago, 484 F.2d 602,

608 (7th Cir. 1973); *see also* <u>Burns v. Reed</u>, 500 U.S. 478 (1993)

(prosecutorial immunity applied to probable cause hearing but not to giving

legal advice to police).  The Supreme Court in <u>Buckley</u> noted that the grand

jury proceedings that occurred after the investigation did not "retroactively

transform that work" into a prosecutorial function:

A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as "preparation" for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial. When the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same.

509 U.S. at 275.

Souk and Reynard have not addressed any of these arguments, and it is their burden to demonstrate that absolute immunity protects them from the state law claims.  Judge McDade's ruling on absolute immunity was discussed in the context of Count I, not in the context of the elements of the state tort claims.  Further, the cases cited by Souk and Reynard in support of absolute immunity involved conduct which occurred after an arrest or during the initiation of criminal proceedings, not during the investigation before an arrest.  *See* Horstman, 284 F.Supp.2d at 1132 (absolute prosecutorial immunity not established where plaintiff alleged that state's attorneys actions "took place long before his arrest.").[5]  Accordingly,

---

[5]Plaintiff's cited cases for malicious prosecution involve police officers, not state's attorneys (d/e 62, pp.13-14).  One of the elements of a malicious prosecution tort is the initiation or continuation of criminal proceedings, actions to which absolute prosecutorial immunity would apply.  However, Reynard and Souk do not address the argument that they could be liable on a malicious prosecution claim for their pre-arrest investigatory actions, which allegedly paved the way for the initiation of criminal proceedings without probable cause.

because Souk and Reynard have not met their burden, the Court will recommend that their assertion of absolute immunity on the state law claims be denied at this point, with leave to renew at the summary judgment stage.[6]

## III. McClean County

McClean County is named as a defendant for purposes of indemnification. The County argues that it should be dismissed if Souk and Reynard are dismissed from all counts. As discussed above, the Court is recommending that Souk and Reynard stay in on the state law claims. Additionally, the County does not dispute Plaintiff's assertion that the County must also indemnify Defendant Brown. Accordingly, the Court will recommend that the County stay in as a defendant at this time.

WHEREFORE, the Court RECOMMENDS that the motion to dismiss by Defendants Souk, Reynard and McClean County be denied. (d/e 54).

The Court FURTHER RECOMMENDS dismissal of all the claims that were already dismissed by Judge McDade in his March 3, 2011 order. Thus, the Court recommends: 1) the dismissal of all claims related to the bypass route; 2) the dismissal of the respondeat superior claim against

---

[6]Reynard and Souk have not raised the issue of qualified immunity on the state claims.

McLean County; and, 3) the dismissal of Reynard and Souk in Count I because they are protected by absolute and qualified immunity.

The Court FURTHER RECOMMENDS the dismissal of Reynard and Souk from Counts II and III on the grounds that Plaintiff concedes that those claims have been dismissed on the basis of absolute and qualified immunity.

If this Recommendation is accepted, the following claims will remain:

Counts I-III (§ 1983 claims) against Defendants Freesmeyer, Hospelhorn, Warner, Brown, and Zayas.

Counts IV-VI (state claims) against Defendants Souk, Reynard, Freesmeyer, Hospelhorn, Warner, Brown, and Zayas.

Count VII respondeat superior claim against the Town of Normal

Count VIII indemnification claim against McClean County and Town of Normal.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of an ECF copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal.

<u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).

See also Local Rule 72.2.

     ENTER:    June 15, 2011

                   _____*s/ Byron G. Cudmore*_____
                    BYRON G. CUDMORE
          UNITED STATES MAGISTRATE JUDGE